James L. SANDERS, Plaintiff-Appellant,

v.

SHELL OIL COMPANY,
Defendant-Appellee.

No. 81–3125.

United States Court of Appeals,
Fifth Circuit.

June 18, 1982.

John L. Dorsey, New Orleans, La., for plaintiff-appellant.

Alvin B. Gibson, Albert H. Hanemann, Jr., New Orleans, La., for defendant-appellee.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Between 1970 and 1973, ten plaintiffs filed eight suits against appellee Shell Oil Company, alleging that Shell had discriminated against them in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. The district judge below eventually consolidated the eight suits and certified them as a class action. The consolidated actions concluded with the entry of a consent decree on July 27, 1976.

The consent decree obligated Shell to perform several specific agreements. For example, Shell agreed to begin on-campus recruiting at ten named predominantly black universities, to advertise itself as an "equal opportunity employer," and to follow specified guidelines in the hiring and promotion of blacks and females. In addition to these explicit requirements, the decree contained more general paragraphs on such subjects as good faith compliance, modification procedures, and, most important to the dispute before us, Shell's commitment to equal opportunity employment. In Paragraph Three of the decree, Shell agreed not to "engage in any act or practice relating to employment opportunity which discriminates against any black or female." [1]

The decree was to remain in force for five years, expiring on January 1, 1981. However, three crucial paragraphs of the decree created and defined the supervisory role that the district court was to play throughout and, if necessary, beyond this period. Paragraph Thirty-One declared that the court

retains jurisdiction of this action in order to assure compliance with the provisions of this Decree and if defendant fails to comply with any provisions of this Decree the Court may order such additional and further relief as may be necessary to assure compliance with the terms of this Decree.

Pursuant to Paragraph Thirty-Three, a proper party could "petition the court at any time before the expiration date of this Decree for an extension hereof on the ground that defendant has failed to comply with any of the terms of the Decree." However, Paragraph Twenty-Seven erected a procedural condition precedent to judicial enforcement or extension of the decree, as follows:

No petition for judicial enforcement of this Decree pursuant to Paragraph 31 or for an extension of the expiration date of this Decree pursuant to Paragraph 33 shall be permitted unless a proper party seeks same and has no less than 30 days before filing such petition:

(1) Notified defendant in writing of the intent to file such a petition, stating grounds therefor, and

(2) Conferred with representatives of defendant about the alleged violation or deficiency and attempted to resolve the matter.

On November 12, 1980, appellant Jesse James Marks filed a petition for extension of the decree, for an order to show cause why Shell should not be held in contempt of court, and for further relief. Marks was one of the ten original plaintiffs in the consolidated action and had served as attorney for the class. At the time of filing the petition for extension, Marks was representing five plaintiffs who had filed Title

---

1. Paragraph Three reads as follows:

Defendant, its officers, agents, employees, successors and all persons and organizations in active concert or participation with them or any of them shall not engage in any act or practice relating to employment opportunity which discriminates against any black or female. Defendant shall not exclude any black or female from employment, limit, segregate or classify any black or female individual, discharge any black or female, fail or refuse to promote, transfer or provide training to any black or female on the basis of race or sex, or otherwise discriminate in any way which would deprive or tend to deprive any black or female of employment benefits or opportunities or otherwise adversely affect his or her status as an applicant for employment or an employee because of such individual's race or sex. Defendant shall receive and process applications for employment and requests for transfer, consider promotions and otherwise administer its personnel policies and practices so as to ensure that no black or female is denied equality of opportunity on the basis of race or sex.

VII actions against Shell in the Eastern District of Louisiana. Marks did not fault Shell for violating the recruiting, hiring, or other requirements specified in the decree. Rather, he argued to the district court that the instances of discrimination alleged in the five new lawsuits constituted violations of Paragraph Three's general commitment (see n.1, *supra*) and necessitated an extension of the decree.

Shell's defense before the court was two-fold. First, Shell argued that Paragraph Three's general ban against discrimination was merely "precatory or gratuitous" language, framed as a nebulous statement of public policy and not specifically enforceable. Shell maintained that the parties had not intended for the decree to serve as a means of adjudicating each and every instance of alleged discrimination for the following five years. Second, Shell insisted that, whatever the meaning of Paragraph Three, Marks had not properly invoked the Court's supervisory powers by complying with the notification requirements of Paragraph Twenty-Seven. According to Shell, Marks had never specified, prior to filing his petition for extension, the provision of the decree that Shell had allegedly violated, nor had he conferred with Shell in an attempt to resolve the matter.

The district court held on the merits that the decree should not be extended but also that Marks had not complied with the procedural requirements in petitioning for the extension.

Finally, the haggling over the petition for extension led to a controversy over discovery. Marks had served on Shell a request for an admission of the genuineness of twelve documents. The documents, mostly internal Shell memoranda, had been taken from Shell by a former employee, William Garibaldi, who was a plaintiff in one of the five pending lawsuits. Shell refused to answer the request for admissions and moved for a protective order, pursuant to Fed.R.Civ.P. 26(c), barring Marks' use or dissemination of what Shell alleged to be purloined and confidential information. A federal magistrate granted Shell's motion, placing the contested documents under seal and forbidding their use by Marks or anyone to whom he had communicated them. The district court affirmed the order on February 18, 1981, observing that the order did not bar any plaintiff from obtaining copies of the documents through normal discovery.

Marks appeals, contending that the district court erred in refusing to extend the decree and in approving the protective order. After reviewing the record and the arguments from each side, we affirm both decisions of the court below.

### I. The Request for Extension of the Consent Decree

Our research indicates that we write on a clean slate in evaluating the district court's application of this general provision of an EEOC settlement decree. No other cases involving these or similar facts have been found.

The district court hewed a path somewhere between Marks' insistence that allegations of discrimination mandated an extension of the decree under Paragraph Three and Shell's assurance that Paragraph Three is merely precatory. After concluding that plaintiffs had not provided Shell with the notice required by Paragraph Twenty-Seven, the court discussed the substantive impact of Paragraph Three as follows:

We cannot accept plaintiffs' assertion that the individual acts of discrimination alleged in the four pending cases in other sections of this court violated Paragraph Three of the consent decree. That paragraph is merely a general statement in which defendant agrees not to discriminate against blacks and females. The obligations imposed by Paragraph Three are no different than those imposed on defendant under Title VII. Were we to interpret that paragraph to mean that any single allegation of discrimination was a potential violation of the consent decree for which an extension thereof could be sought, defendant would never be able to obtain an end to this court's

scrutiny of its employment practices under the decree.

We find this a reasonable construction and application of the paragraph. In concluding that individual acts of discrimination do not automatically violate Paragraph Three, the court has not necessarily accepted Shell's invitation to render that paragraph meaningless. If confronted with allegations and evidence of a discriminatory policy that threatened to thwart the more specific objective of the decree, the court undoubtedly could, upon proper motion by an aggrieved party, rely on Paragraph Three to extend the supervisory period. However, such a determination inevitably rests within the discretion of the supervisory court. Paragraph Thirty-One's provision for retention of jurisdiction is, after all, permissive rather than mandatory: "[T]he Court *may* order such additional and further relief as may be necessary . . . ." (Emphasis added). In opposition to this plain language, appellant can point to no section of the decree that *requires* the district court to extend the five-year period on receiving an allegation, or even a clear showing, of individual discriminatory acts.

Acceptance of appellant's position would turn every personnel decision by Shell into a potential subject for challenge under the decree. In effect, it would convert the district court into a separate Equal Employment Opportunity Commission (EEOC), not only empowered, but compelled to investigate and resolve every allegation of discrimination launched against Shell. It is not at all surprising that the court insisted that there be clear authority either in law or in the decree itself for so expansive an interpretation of its responsibilities under the decree. No such authority exists.

Moreover, the EEOC itself appears to have endorsed, at least tacitly, the court's position. The EEOC was a party to the original action and participated in negotiation of the consent decree. Marks had advised the EEOC of the pending allegations and his intention to move for an extension. In a letter of January 14, 1981, however, the attorney responsible for monitoring the decree for the EEOC informed the court that she had reviewed the documents connected with the petition and wished to inform the court that the EEOC would "not participate in this matter and [would] take no position before the Court." The agencies' abstention, while neither conclusive nor binding on the court's discretion, certainly bolsters the court's determination that the parties did not devise the decree as a means for adjudicating every alleged infraction of Title VII.[2]

■ The record also supports the district court's finding that Marks did not, in any event, comply with the procedural prerequisites for obtaining an extension. The correspondence contained in the record reveals that Marks never fully informed Shell, prior to filing this petition, of the legal grounds on which he hoped to extend the decree. Even if Shell's familiarity with the five pending lawsuits could be said to have constituted constructive notice, Marks failed to fulfill the second requirement of Paragraph Twenty-Seven by convening, or making a good faith effort to convene, a conference with Shell concerning the alleged violations of Paragraph Three. This procedural default alone justified dismissal of the petition under the terms of Paragraph Twenty-Seven. Moreover, the inadequacy of both the notice and the effort to promote a settlement appears to have figured in the court's discretionary decision under Paragraph Thirty-One not to extend the decree and prolong its sizeable supervisory constraints[3] purely as a means for redressing the alleged instances of discrimination.

We intimate no view, of course, as to the merits of those allegations. Certainly our

---

**2.** As the district court observed in its order, "Apparently the EEOC, which contributed considerable input in the drafting of the decree and approved it, agrees that the mere filing of single discrimination charges does not constitute a violation of the decree as it has neither sought

extension of the decree nor supported plaintiffs' move to do so."

**3.** Paragraph 28 of the decree obligated Shell to prepare annually a report describing in detail its activities in compliance with the specific requirements of the decree. The reports were

decision does not prejudice or otherwise impede the ordinary recourse of any aggrieved employee to the protections of Title VII. We merely hold that the court below acted within the bounds of its discretion in refusing to extend this particular decree solely in order to investigate individual allegations of discrimination.

## II. *The Protective Order*

Rule 26(c) of the Federal Rules of Civil Procedure authorizes a district court, "[u]pon motion by a party or by the person from whom discovery is sought and for good cause shown," to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. . . ." Shell offered four reasons in support of its motion for such an order:

1. The documents are private property of Shell Oil Company and have been removed from its possession and copied without authorization.

2. The Exhibits contained confidential business information, unknown to the public and competitors.

3. The revelation of such confidential information could give competitors of Shell Oil Company a competitive advantage, since the information is not available to the public.

4. The information contained in the Exhibits is irrelevant and immaterial to the instant action, and in any event, the need for confidentiality greatly outweighs any benefits which could be obtained by disclosure of these confidential materials.

Shell submitted accompanying affidavits from an employee relations manager and a staff auditor averring that former employee (and Title VII litigant) Garibaldi had obtained the documents without authorization and that the materials were confidential.

The resulting protective order placed the documents under seal, prohibited plaintiffs and their counsel from communicating the material contained in the documents to any party other than Shell "or as directed by further orders of this Court," and relieved Shell from its obligation to respond to the request for admissions "until further order by the Court is entered." Appellant attacks the order on grounds that the order issued upon less than a showing of "good cause" and that the breadth of the order imposes a prior restraint on appellant's First Amendment right to communicate information.

■ A trial court enjoys wide discretion in determining the scope and effect of discovery. *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539 (5th Cir. 1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). It is, in fact, unusual to find an abuse of discretion in discovery matters. *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969). The circumstances surrounding the issuance of the challenged order suggest that the court below did not abuse its discretion in basing its protective order on Shell's concededly conclusory showing of cause. Moreover, although a protective order prohibiting the dissemination of information can constitute an improper prior restraint on speech, *see Rodgers v. United States Steel Corp.*, 536 F.2d 1001 (3rd Cir. 1976), the terms of the order and the circumstances under which it was issued convince us that our consideration of Marks' constitutional claim would, on this record, be premature.

Shell's motion for a protective order did not ask the district court to seal all of the disputed material indefinitely. Rather, it asked for an order protecting the documents "from any further public view or dissemination until such time as the relevancy of the documents to the instant lawsuit and need for confidentiality of the documents by Shell Oil Company can be determined by normal discovery procedures." Shell also assured the court, on the record, that it would not use the protective order to oppose any plaintiff's effort to obtain the materials through ordinary discovery. The court already had refused to extend the

---

to be submitted to the EEOC, and, on request, to plaintiffs' counsel, and the EEOC and the plaintiffs' counsel reserved the right to inspect

and copy all documents used to prepare the reports.

decree, thereby channeling the litigation into individual lawsuits elsewhere. Against this background, the court cautiously suspended all use of the documents pending its further directions.

The court may well have viewed with skepticism Shell's claim that the documents were both confidential and freely discoverable. Still, having foreclosed further proceedings under its supervision of the decree, it properly chose to reserve the inquiry into the relevance and confidentiality of these documents for the more orderly processes of discovery in the ongoing lawsuits. The colloquy proceeding its affirmance of the magistrate's order shows that the court did not view the order as the last word of any plaintiff's right to obtain and use the documents:

> The Court: ... Well, then, I come to the realization that even though the Magistrate has ordered these materials sealed under the Protective Order that he granted, the plaintiffs in those four cases could seek discovery of documents ordered sealed. And that being the case, I do not know there is much for me to do except to affirm the Magistrate.
>
> Mr. Dorsey: Your Honor, by affirming the Magistrate the Court is saying that the plaintiff has no right to use those documents?
>
> The Court: I am saying that I have not said that. He ordered them sealed.
>
> .    .    .    .    .
>
> Yes, my affirmance of the Magistrate's order for the time being, anyway, means that you cannot use those particular ones, but there is no restriction on your seeking the same documents. You have got to know the identity of them, since you had them in your possession through some discovery mechanism that you might institute in any or all of those four cases.
>
> Mr. Dorsey: If I understand the Magistrate's order, I am not as a counsel to even discuss these documents with anyone?
>
> The Court: Those particular ones, as I take it. Counsel for the defendant con-

cedes in his memorandum that "We agree that plaintiff is entitled to seek information in the pending cases."

In short, there is no showing that any plaintiff has actually been denied access to, or use of, any of these documents. Unlike the orders attacked in the cases cited by appellant, *e.g., Rodgers, supra,* 536 F.2d at 1005; *Bernard v. Gulf Oil Co.,* 619 F.2d 459, 464–65 (5th Cir. 1980) (en banc), *aff'd,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), the order before us was nothing more than a temporary suspension of activity pending a more thorough determination of the parties' respective rights. Appellant merely tacked this issue onto his appeal from the consent decree adjudication when, for all the record shows, the disputed documents may have been freely released and circulated in the individual lawsuits that advanced outside the now-closed decree. Any subsequent abuses of discovery by Shell should be redressed either in those proceedings or on a more complete record showing that subsequent efforts to obtain the documents were futile.

We find the orders of the district court to be grounded in sound discretion.

AFFIRMED.