**Kenneth SMITH, Plaintiff-Appellant,**

v.

**TRANSWORLD DRILLING COMPANY Vessel, Rig 44, In Rem, Defendant-Appellee.**

No. 84–3095.

United States Court of Appeals, Fifth Circuit.

Oct. 10, 1985.

---

Borne, Senette & Senette, Allen J. Borne, Franklin, La., for plaintiff-appellant.

Deutsch, Kerrigan & Stiles, Christopher Tompkins, Howard L. Murphy, New Orleans, La., for defendant-appellee.

Before ALVIN B. RUBIN and REAVLEY, Circuit Judges, and DUPLANTIER *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

In this seaman's personal injury suit, the district court determined that the jury's verdict in favor of the seaman was against the great weight of the evidence and ordered a new trial. The second trial resulted in a jury verdict in favor of the vessel owner. The seaman first contends that the district court abused its discretion in granting the new trial. He argues, alternatively, that a third trial should be ordered because the court erred in charging the second jury. He also contends that the verdict of the second jury is "incorrect," a claim we have treated as a challenge to the sufficiency of the evidence supporting the second jury's verdict. Finally, he argues that his claim for maintenance and cure should not have been decided by the judge, but should have been submitted to a third jury.

We conclude that the trial court did not err in granting the new trial. The district court found that the verdict was against the great weight of the evidence, and we do not find the evidence in the record of the first trial so evenly balanced, or nearly so, as to permit us to label the district court's action an abuse of discretion. The second trial was fair and appellant points to no reversible error. We also find the trial court's denial of plaintiff's motion for directed verdict proper. The maintenance and cure claim was submitted to and properly decided by the court. We therefore affirm the judgment.

I.

Kenneth Smith was employed as a roustabout on a drilling rig owned by Transworld Drilling Company. In August 1980, during a single seven-day shift or "hitch," he allegedly injured his back in two separate accidents aboard the drilling rig. He contends that he first strained his back while carrying a drill bit. He also contends that later, while his fingers were caught in the wire mesh of a trash basket attached to a crane, the crane operator abruptly lifted the basket, forcing his back into a pipe rack. He asserts that one of his fellow employees, a crane operator, negligently caused the first injury because he failed to move the drill bit closer to the tool shack to which Smith was directed to carry it and that other fellow employees, who were more experienced, were also negligent because they should have helped him to move the bit. Smith also asserts that the crane operator negligently caused his second injury because he lifted the basket without receiving a signal to do so and without ensuring that Smith was out of the way.

The parties stipulated to seaman status. Following a two-day trial, the jury found that both Smith and Transworld were negligent. Smith was found forty percent responsible and Transworld sixty percent responsible. The jury fixed Smith's total damages at $35,000. The district court entered judgment for $21,000, but then, on Transworld's motion, ordered a new trial.

Rule 59 of the Federal Rules of Civil Procedure confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

and the reliability of the jury's verdict. The rule does not specify what grounds are necessary to support such a decision but states only that the action may be taken "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."[1] A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence,[2] the damages awarded are excessive,[3] the trial was unfair,[4] or prejudicial error was committed in its course.[5]

 The trial court's power to grant a new trial on the basis of the court's firm belief that the verdict is clearly contrary to the weight of the evidence has, as Professor Charles Wright observes, "long been regarded as an integral part of trial by jury."[6] In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party. While the court is to respect the jury's collective wisdom and must not simply substitute its opinion for the jury's, "[i]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial."[7]

 In *Shows v. Jamison Bedding, Inc.*,[8] we summarized the standard governing review of the grant of a new trial. We can reverse that decision only if the district court abused its discretion. When a new trial is granted on the ground that the evidence will not support the jury's verdict, we look carefully to the record. If the issues are simple, the evidence is not hotly disputed, and the trial has not been tainted

by "pernicious occurrences," we review the record, then affirm the granting of a new trial only if we are convinced that the verdict conflicts with the great weight of the evidence. If, on the other hand, the issues are complex, the evidence is controverted, or the conduct of the trial was tainted,

we will affirm a new trial order even if on our own review of the "cold record" we are not convinced that the jury verdict was against the great weight of the evidence. It is enough in this situation that, in view of possible considerations not apparent from the written record, we can perceive a sound basis for the trial judge's finding the verdict against the great weight of the evidence.[9]

 The issues in this case were simple. The record reveals a fairly tried case without a hint of improper influence on the jury's verdict. The occurrence of the accidents, the existence of Smith's injuries, and the blameworthiness of Transworld's conduct were all, however, disputed, and conflicting testimony was presented on each of these issues.

The only evidence of the occurrence of the two incidents about which Smith complains came from Smith himself. His testimony can be summarized as follows. While moving a thirty-pound drill bit during a seven-day hitch aboard Transworld's rig, Smith felt a "sting" in his back. One or two days later, during the same hitch, he caught his hand in a trash basket and bumped his back against a pipe rack when the basket was raised by the rig's crane. Although he mentioned both incidents to two superiors and to a fellow roustabout,

1. Fed.R.Civ.P. 59(a). *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 2805–2810, 2818–2820 (1973).

2. *See, e.g., Eyre v. McDonough Power Equip., Inc.*, 755 F.2d 416, 420–21 (5th Cir.1985); *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir.1980).

3. *See, e.g., Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir.1985).

4. *See, e.g., Carson v. Polley*, 689 F.2d 562, 570–71 (5th Cir.1982); *Martinez v. Food City, Inc.*, 658 F.2d 369, 372–74 (5th Cir.1981); *Hand v. United States*, 441 F.2d 529, 531 (5th Cir.1971).

5. *See, e.g., Reed Bros., Inc. v. Monsanto Co.*, 525 F.2d 486, 499–50 (8th Cir.1975), *cert. denied*, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 645 (1976).

6. C. Wright, *Federal Courts* 633 (4th ed. 1983).

7. *Id.* at 634.

8. 671 F.2d 927, 930–31 (5th Cir.1982).

9. *Id.* at 931.

no accident report was completed. Smith was able to finish the hitch. Approximately halfway through his next hitch, which commenced after seven days of leave, Smith was overcome by pain. A helicopter was summoned, and Smith was transported to a hospital. Smith reported for his next hitch, but was again forced to stop work about halfway through the seven-day period. He never returned to work for Transworld.

There was much evidence contradicting Smith's account. Although Smith claims to have reported the two incidents to three separate people, each of them testified at trial that Smith did not report his injuries to them and that they could not recall the incidents about which Smith testified. They also testified that, had Smith told them of his problems, they would have suggested that Smith have an accident report made out. When Smith complained of pain on the later hitch, he completed an injury report, which indicates he knew of the need to report injuries. In the section of the report devoted to a description of his injuries, he simply wrote "chest pain—dizzy," and did not mention the kind of injury now claimed. Moreover, when asked to describe in detail how the injury occurred, Smith wrote "dizzy and sick." When Smith arrived at the hospital, he told the examining physician that he had been feeling dizzy and experiencing chest pains for approximately eight days. He did not complain about back pain and did not relate the occurrence of either of the two incidents in which he was purportedly injured. At trial, Smith sought to explain his failure to mention these incidents by his fear of losing his job. The doctor's physical examination of Smith was completely negative. Smith saw the same doctor again a few days later. Again, he did not complain of back pain or describe any injuries to his back.

When Smith quit his job two weeks later, his supervisor conducted a termination interview. When asked to explain why he desired to leave, Smith simply stated that he was "working too hard." He made no mention of back pain, nor did he report either of his two alleged accidents. A month later, Smith was referred to an orthopedic specialist by his attorney. During this examination, Smith for the first time gave a history of a back injury in August, two months before. At that time, he told the doctor of the drill-bit incident but did not mention the trash-basket incident. During the examination, the doctor found no objective manifestations of back injury. On two subsequent examinations, the doctor again found no objective indications of back problems. The doctor recommended after the first examination that Smith return to his job as a roustabout.

Smith saw a neurosurgeon in December 1981, over a year after he allegedly injured his back. He told the neurosurgeon that he had injured his back while lifting a drill bit on August 25, 1980, and that he had also injured his back again two days later. Smith, however, left the rig on August 25 and did not return until his next hitch. The neurosurgeon testified that his examination revealed objective manifestations of a soft tissue injury to Smith's back. Another doctor made findings two years after the alleged injury based on a thermograph, a device which measures abnormal heat emissions from the body. These findings were consistent with a soft tissue injury. Both of these doctors testified, however, that they could not determine when Smith sustained his injury.

This evidence adequately supports the district court's conclusion that the verdict was against the great weight of the evidence.

## II.

Smith argues in a conclusory manner that the district court erred in the second trial by failing to give the jury "his standard charge on circumstantial evidence." Smith did not, however, object to the court's jury instructions. Absent objection to the charge, a trial court will be reversed for error in its instructions only if the mistake was "plain," that is, as we have

repeatedly said, " 'so fundamental as to result in a miscarriage of justice.' " [10]

██ Smith has not described specifically how the court's instructions were flawed. He asks us, however, to compare the jury instructions in the first trial, which he apparently approves, with the jury instructions in the second trial. Smith asserts that, if we do so, the error will be clear. Having been left this task, we have examined both charges and have discovered no error in the second trial's instructions, much less plain error.

In the first trial, the court instructed the jury that circumstantial evidence is "proof of a chain of circumstances pointing to the existence or nonexistence of certain facts." The court went on to instruct that the law draws no distinction between direct and circumstantial evidence. In the second trial, the court did not expressly draw a distinction for the jury between circumstantial and direct evidence. The court did instruct, however, that

> [w]hile you are obliged to consider only what is evidence in this case, you are, nevertheless, permitted to draw reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience or common sense. In other words, you may make deductions and reach conclusions about the case which common sense leads you to draw from the facts which have been established to your satisfaction.

Apparently, Smith's complaint is that the district court did not mention circumstantial evidence by name and expressly tell the jury that they are entitled to rely upon it to the same extent as direct evidence. This is not plain error if it be error at all.

## III.

██ Smith argues that the jury's verdict in the second trial is "incorrect" because the jury found that Transworld was not negligent. The sufficiency of the evidence supporting a jury verdict may be attacked only on motions for a directed verdict or for judgment notwithstanding the verdict.[11] Although Smith unsuccessfully moved for a directed verdict in the second trial at the close of all the evidence, he did not make any post-verdict motion for judgment n.o.v. Consequently, the only relief Smith may obtain from us on appeal as to this issue is an order for a new trial. A party's failure to move for a judgment n.o.v. does not prohibit review of the trial court's denial of the directed verdict motion, but such failure does preclude us from remanding the case with directions to enter judgment for the party.[12]

██ The district court did not err in denying Smith's motion for a directed verdict. While our opinions have until recently failed to set a clear standard for evaluating the sufficiency of the evidence with respect to a trial court's grant or denial of a seaman's motion for directed verdict or judgment n.o.v., in *Springborn v. American Commercial Barge Lines, Inc.,*[13] we completed a full study of the question. There we held that

> [a] plaintiff should prevail on these motions [for directed verdict or judgment n.o.v.] only if the facts and inferences point so strongly in his favor that the court believes that reasonable men could not arrive at a contrary verdict.

The evidence adduced at the second trial was basically the same as that presented at

**10.** *Henderson v. United States Fidelity & Guar. Co.,* 695 F.2d 109, 113 (5th Cir.1983) (quoting *Delancey v. Motichek Towing Serv. Inc.,* 427 F.2d 897, 901 (5th Cir.1970)).

**11.** *See* Fed.R.Civ.P. 50; *see generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2521 (1971).

**12.** *United States v. Valdosta-Lowndes County Hosp. Auth.,* 696 F.2d 911, 912–13 & n. 1 (11th Cir.1983); *Jackson v. Seaboard Coast Line R.R.,*

678 F.2d 992, 1021–22 (11th Cir.1982); *Gorsalitz v. Olin Mathieson Chemical Corp.,* 429 F.2d 1033, 1037–38 (5th Cir.1970), *cert. denied,* 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972). *See generally* 5A Moore's Federal Practice ¶ 50.-12 (1985).

**13.** 767 F.2d 89, 100 (5th Cir.1985); *see also Thornton v. Gulf Fleet Marine Corp.,* 752 F.2d 1074 (5th Cir.1985); *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

**616**

the first trial. It was patently not so one-sided that a verdict favoring defendant Transworld could occur only to minds unreasonable in judgment.

## IV.

During the first trial, the parties stipulated on the record that "the matter of maintenance and cure will be handled by the court ... [and] the preagreed rate, if any rate is applied, is the fifteen dollar a day rate." Following the second trial, the district court made findings and conclusions on maintenance and cure and denied Smith's claim. On appeal, Smith argues that the stipulation from the first trial did not extend to the second trial and that the issue of maintenance and cure should not have been decided by the court. Moreover, Smith argues, the court's findings and conclusions on the merits of the maintenance and cure claim are erroneous.

 Smith's first argument is without merit. The right to maintenance and cure is not a jury issue but one of maritime law and is to be decided by the court. A seaman may obtain a jury trial of the question by joining it with a Jones Act claim and demanding jury trial.[14] Absent such a demand, the issues raised by this claim are for the court. Smith stipulated to a bench trial of maintenance and cure before the first jury trial. At no time thereafter did he request that the court submit maintenance and cure issues to the jury, he did not argue about maintenance and cure in his opening or closing statements, and he did not object or comment upon the court's failure to submit his maintenance and cure claim to the jury. Moreover, Smith stood silent when Transworld submitted proposed findings and conclusions on the maintenance and cure issue. The district court acted properly in deciding the issue.[15]

**14.** *See Fitzgerald v. United States Lines,* 374 U.S. 16, 20–21, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963).

**15.** *Cf.* Fed.R.Civ.P. 49(a).

**16.** Fed.R.Civ.P. 52(a) provides, in pertinent part:

Smith's second argument is likewise without merit. The district court found that Smith did not demonstrate that "any compensable back injury occurred, was aggravated or manifested itself while plaintiff was in the service of the vessel." Rule 52(a) of the Federal Rules of Civil Procedure make this finding final unless it is clearly erroneous.[16] We do not find it in error, let alone error clear.

For the reasons set forth above, the judgment of the district court is AFFIRMED.

Findings of fact [by the court], whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.