Cecil **SCOTT**, et al.,
**Plaintiffs–Appellees,
Cross–Appellants,**

v.

**MONSANTO COMPANY**, et al.,
**Defendants–Appellants,
Cross–Appellees.**

No. 87–6304.

United States Court of Appeals,
Fifth Circuit.

March 30, 1989.
Rehearing Denied April 27, 1989.

Jonathan B. Shoebotham, Woodard, Hall & Primm, Houston, Tex., Walter J. Crawford, Jr., Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Beaumont, Tex., Mark G. Arnold, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, St. Louis, Mo., Robert A. Hall, Houston, Tex., for defendants-appellants, cross-appellees.

David M. Lacey, Michael A. Pohl, Gilpin, Pohl & Bennett, Houston, Tex., Stephen B. Murray, New Orleans, La., for plaintiffs-appellees, cross-appellants.

Before REAVLEY, WILLIAMS and JONES, Circuit Judges.

REAVLEY, Circuit Judge:

This case involves the claims of 126 plaintiffs against Monsanto Company, alleging liability for physical injuries resulting from exposure to polychlorinated biphenyls (PCBs), a product formerly manufactured by Monsanto. A bellwether trial with eight plaintiffs was held and the jury rendered a verdict in favor of Monsanto. Upon consideration of posttrial motions from all parties, the district court entered orders granting a new trial for the eight plaintiffs and then dismissing the causes of action of all plaintiffs for lack of jurisdiction. Monsanto asks that both orders be reversed and seeks judgment on the jury verdict. We vacate the district court's orders and remand for disposition consistent with this opinion.

## I. Background

This product liability action was originally filed in November 1984 by a single plaintiff against General Electric. The fifth amended complaint presented the final form of this litigation with the claims of 126 plaintiffs against a single defendant, Monsanto Company. Federal court juris-

diction was based on diversity of citizenship. The plaintiffs are residents of Alabama, Indiana, Tennessee, and Texas. Monsanto is a Delaware corporation with its principal place of business in Missouri.

The district court, Eastern District of Texas, denied Monsanto's pretrial motion to sever and transfer the plaintiffs' claims. Because a single trial was deemed too burdensome, the district court ordered ten plaintiffs be selected for a "bellwether" trial. *See Manual for Complex Litigation 2d,* § 33.26 (1985). Eight plaintiffs eventually participated in the trial at issue in this appeal. This group of plaintiffs includes the only resident of the Eastern District of Texas who is party to the action.

The trial lasted over two weeks and featured the testimony of over 60 witnesses. The evidence centered primarily on the nature of the plaintiffs' exposure to PCBs and the causal relationship between PCBs and the plaintiffs' ailments. Issues of strict liability and negligence were submitted to the jury. After an hour and fifteen minute's deliberation, the jury returned a verdict in favor of Monsanto on all claims of the eight trial plaintiffs.

Numerous motions from all parties were submitted posttrial to the district court. Monsanto moved to enter judgment on the jury verdict and to sever and transfer the remaining claims. The plaintiffs moved for a new trial. After a hearing but before the district court's decision, Monsanto filed its first amended motion to dismiss or transfer. The district court granted the plaintiffs' motion for a new trial. In addition, the district court dismissed the case—the claims and causes of action of all plaintiffs —for lack of jurisdiction.

Monsanto appeals from the district court rulings. First, Monsanto contends that the new trial order is an abuse of the court's discretion. Second, Monsanto contends the district court erred in dismissing the case for lack of jurisdiction; the company denies that its first amended motion to dismiss or transfer urged the dismissal of the tried and determined claims. Monsanto requests entry of judgment on the jury verdict and transfer of the remaining untried claims.

The plaintiffs' cross-appeal alleges the district court erred in granting Monsanto's motion for a protective order and in denying plaintiffs' motion for sanctions for abuse of discovery.

## II. Discussion

### A. *Dismissal for Lack of Jurisdiction*

The district court dismissed the case for lack of jurisdiction upon consideration of previous motions reurged by Monsanto. Both before and after the trial, Monsanto asserted the merits of transferring the claims to the districts in which they arose. In its posttrial first amended motion to dismiss or transfer, Monsanto incorporated any previously made arguments in support of dismissal or transfer of the remaining untried causes of action. The district court's order does not state the basis on which jurisdiction, either personal or subject matter, was found to be absent. At least one pretrial motion to dismiss alleged a lack of diversity; the dismissal of all defendants save Monsanto, however, perfected diversity. Another argument urged in earlier motions was improper venue.

Monsanto contends the district court incorrectly dismissed the case for lack of jurisdiction. In response, the plaintiffs argue that Monsanto cannot appeal the grant of its own motion. There is merit, however, to Monsanto's contention that the motion granted by the court is not the motion urged by Monsanto. Dismissal of all the claims wipes out a favorable jury verdict; that Monsanto intended to request the transfer or dismissal of only the remaining untried claims is evident.

The district court's jurisdiction over the case is not defective for lack of diversity. The plaintiffs' claim that dismissal was nonetheless proper under the doctrine of forum non conveniens. That doctrine, however, is not applicable if jurisdiction is lacking or venue is improper. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947); *Driscoll v. New Orleans Steamboat Co.,* 633 F.2d 1158, 1159 n. 1 (5th Cir.1981) (citing 15 Wright, Miller & Cooper, *Federal Practice*

*and Procedure 2d* § 3828 (1986)). A dismissal for lack of jurisdiction on the basis of forum non conveniens, therefore, would be inappropriate. Under 28 U.S.C. § 1404(a), transfer is the proper method for a change of venue under such circumstances.

■ If venue is improper, the district court may dismiss or transfer depending on the interests of justice. 28 U.S.C. § 1406(a). The district court repeatedly denied Monsanto's pretrial motions to dismiss or transfer the claims. In addition, the district court appears to have adequate support for its decision to try the bellwether trial in the Eastern District of Texas. On the facts of this case, dismissal of all the claims under § 1406(a), after a jury verdict has been returned on some of those claims, would be error. There appears to be no other basis upon which the district court could have found jurisdiction, over at least the claims of the eight trial plaintiffs, to be absent. The district court's order dismissing the case for lack of jurisdiction is vacated.

### B. *New Trial*

The grant or denial of a new trial is within the discretion of the district court. A greater degree of scrutiny, however, is given to the grant of a new trial. *Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360, 362–63 (5th Cir.1980) (per curiam). In review of cases such as this one, the broad discretion allowed to the trial court is tempered by the deference due to a jury. *See Brun–Jacobo v. Pan American World Airways, Inc.,* 847 F.2d 242, 244 (5th Cir.1988); *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir.1982); *Conway,* 610 F.2d at 362. A new trial may be appropriate if the verdict is against the weight of the evidence, the amount awarded is excessive, or the trial was unfair or marred by prejudicial error. *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir.1985). If the new trial is granted on evidentiary grounds, the jury's verdict must be "against the great—not merely the greater—weight of the evidence." *Conway,* 610 F.2d at 363.

The district court in this case expressed its inclination to grant a new trial to avert a "miscarriage of justice." In its view, the evidence left no question that the plaintiffs were exposed to PCBs and that PCBs had a detrimental effect on their health. The district court considered no single ground asserted by the plaintiffs to be a sufficient basis upon which to grant a new trial. The combined effect of the "grounds taken together, plus the miscarriage of justice" influenced the district court's decision to grant the plaintiffs' motion for a new trial.

The plaintiffs argue in support of a new trial on a number of points. First, in light of the testimony presented at trial, the plaintiffs contend that the jury's verdict is against the great weight of the evidence. Second, the plaintiffs contend that a number of occurrences tainted the proceedings and denied them a fair trial. The plaintiffs claim that the defendant misrepresented evidence to the jury and irreparably harmed their theory of medical causation. The plaintiffs also claim that Monsanto's behavior during discovery and an erroneously granted protective order prejudiced the preparation and presentation of their case. In addition, the plaintiffs allege the hurried nature of the proceedings compromised their case as evidenced by the jury verdict rendered in a little over an hour's time.

### 1. Weight of the evidence

The plaintiffs' strongest argument in support of a new trial is that the great weight of the evidence was against the jury verdict. Against the great weight of the evidence is a standard not easily met. *Shows,* 671 F.2d at 931. The record must be closely examined. Several factors help guide the review of an order granting a new trial: (1) whether the issues are simple; (2) whether the evidence is undisputed; and (3) whether the trial proceedings are unmarred by "pernicious occurrences." *See Smith,* 773 F.2d at 613; *Shows,* 671 F.2d at 930–31; *Conway,* 610 F.2d at 363.

If the issues are complex, the evidence in contention, or the proceedings marred, the new trial order may be affirmed "even if

on our own review of the 'cold record' we are not convinced that the jury verdict was against the great weight of the evidence." *Smith*, 773 F.2d at 613 (quoting *Shows*, 671 F.2d at 931). The district court's experience and first-hand exposure to the proceedings thus figure into the determination of whether the trial was fair and the jury verdict reliable.

The issue of medical causation, although not simple, is not unusually complex. The evidence presented at trial on the issue of causation, however, was greatly disputed. The plaintiffs, with apparent agreement from the district court, assert that the absence in the jury verdict of any attribution of fault or causation to Monsanto shows either prejudice or a lack of understanding by the jury.

The plaintiffs presented the testimony of ten expert witnesses on the medical probability that PCBs directly or indirectly caused the injuries suffered by the plaintiffs. Testimony elicited from present and former Monsanto employees established an acknowledged link between PCBs and both chloracne and liver damage. Dr. Daniel Teitelbaum, a physician with impressive credentials, testified early in the plaintiffs' case-in-chief to define the PCB syndrome as a cluster of disorders occurring in a group of individuals exposed to PCBs. In support of his opinion, Dr. Teitelbaum pointed to the International Association for the Research on Cancer's categorization of PCBs as probable human carcinogens. Dr. Teitelbaum, based on his examination of the plaintiffs, identified their separate ailments as the effects of PCB exposure. These causal effects included: asthma; nerve damage; diseases of the blood-forming organs, e.g. leukemia; toxic hepatitis; lung disease; chloracne; lung and skin cancer; and, colon cancer.

Different aspects of Dr. Teitelbaum's comprehensive opinion on medical causation were seconded by other expert witnesses presented by the plaintiffs. A dermatologist, a neurologist, and other physicians and professionals testified that PCBs directly caused or indirectly caused or probably caused the plaintiffs' ailments. These experts had varying experience with the effects of PCBs, either through their own research or their review of the medical literature.

Much of the testimony centered on the correct interpretation of scientific and medical studies pertaining to the toxic effects of PCB exposure. Monsanto's cross-examination of plaintiffs' witnesses, as well as examination of its own witnesses, emphasized the hesitation of the medical community to affirmatively pronounce a cause and effect relationship between PCBs and the various diseases afflicting the plaintiffs. The jury listened to days of expert testimony on the strengths and weaknesses of assorted animal studies, epidemiological studies, and other published reports on the effects of PCBs.

The jury heard from the surviving plaintiffs as they described their work experience and exposure to PCBs and their subsequent illnesses. All plaintiffs claimed to suffer from chloracne and at least half the plaintiffs claimed to suffer from some form of liver disease. The plaintiffs' illnesses were debilitating and often life threatening.

Several expert witnesses for Monsanto offered their opinions that the plaintiffs' ailments were not caused by PCBs. Monsanto's evidence refuted the diagnoses of chloracne and attributed any acknowledged liver disease to alcohol or other causes. Dr. Labarathe, another physician with impressive credentials, testified that insufficient evidence existed to establish a cause and effect relationship between PCBs and any condition aside from chloracne and liver disease. Another physician, Dr. Busch, examined the trial plaintiffs and testified that he found none of the plaintiffs to be suffering from chloracne. Further, Dr. Busch's medical opinion attributed their disparate illness to disparate causes.

Monsanto also actively disputed the extent and nature of the plaintiffs' exposure to PCBs. Former co-workers often contradicted the plaintiffs' depiction of their work environment and PCB exposure. In addition, Monsanto sought to link many of the ailments with other chemicals to which the

plaintiffs had been exposed or with medications prescribed to the plaintiffs.

The evidence presented to the jury was protracted and hotly disputed. The controverted nature of the evidence may add insulation to a district court's discretion in granting a new trial. The court's discretion, however, is not impenetrable. The more careful scrutiny given to orders granting new trials is intended to assure that the court "does not simply substitute [its] judgment for that of the jury, thus depriving the litigants of their right to trial by jury." *Conway*, 610 F.2d at 363. As in *Conway*, the evidence presented in this case provided the jury with a basis upon which to arrive at more than one conclusion; "there *is* no great weight of evidence in any direction." *Id.* at 367 (emphasis in original).

Whenever a trial court considers a motion for a new trial it may weigh the evidence presented to the jury. *Bazile v. Bisso Marine Co.*, 606 F.2d 101, 105 (5th Cir.1979), *cert. denied*, 449 U.S. 829, 101 S.Ct. 94, 66 L.Ed.2d 33 (1980). To an extent, then, the trial court substitutes its judgment of the facts and of the credibility of the witnesses for that of the jury. *Massey v. Gulf Oil Corp.*, 508 F.2d 92, 95 (5th Cir.), *cert. denied*, 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975). A jury has the "undoubted power to sift the evidence before it and to believe or disbelieve portions of the testimony of various witnesses (or even of the same witness) in constructing its own view of what most probably happened." *Conway*, 610 F.2d at 367. Against the great weight of the evidence is a confining standard; a lesser standard would damage the jury's role as the principal trier of fact. *Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir.1976). Issues of credibility, considered by the trial court in this context, are more akin to evaluations of the weight of the evidence than to evaluations of the believability of various witnesses. *See Massey*, 508 F.2d at 94 & n. 1; *see also Smith*, 773 F.2d at 613–14 (plaintiff's testimony was given less weight where it was the only evidence offered in support of plaintiff's story and was contradicted by several witnesses for the defendant);

*Shows*, 671 F.2d at 933 (the testimony of defendant's main witness, which was "so riddled with inconsistencies as to be barely credible, if credible at all," weakened the evidence in favor of defendant's version of the accident); *Bazile*, 606 F.2d at 105 (trial court was entitled to weigh the defendant's presentation of numerous rebuttal witnesses against the fact that plaintiff was the only witness testifying to his version of the events). We would not expect disagreement between judge and jury upon the integrity of multiple witnesses to be a sound basis for a new trial.

■ The jury rendered a verdict in favor of Monsanto on the liability claims of the eight trial plaintiffs. The evidence presented to the jury was highly controverted. Dozens of witnesses gave expert testimony on whether the plaintiffs' ailments were caused by exposure to PCBs. Absent a "pernicious occurrence" during the proceedings, this record does not justify rejection of the jury's verdict.

2. Occurrences marring the proceedings

On cross-examination, plaintiffs' witness, Dr. Teitelbaum, conceded that *Harrison's Principles of Internal Medicine*, an authoritative text on the subject, did not mention PCBs. Similarly, an expert witness for Monsanto, Dr. Busch, testified that *Harrison's* made no reference to a PCB syndrome. During his closing argument to the jury, counsel for Monsanto emphasized this testimony. After trial, plaintiffs' counsel discovered a reference in *Harrison's* to the occurrence of "toxic acquired porphyria a liver disease ... in individuals accidently exposed to [PCBs]." The plaintiffs contend that Monsanto's vigorous argument of the witnesses' misstatements irreparably undermined their theory of medical causation.

■ Although plaintiffs attempt to characterize counsel's misstatement as a "pernicious occurrence," the district court was correct in its implicit holding that this statement during closing arguments alone is insufficient grounds for a new trial. Monsanto's argument was not calculated,

prejudicial, or even inaccurate as to testimony given at trial. *Cf. Edwards v. Sears, Roebuck and Co.,* 512 F.2d 276, 283–86 (5th Cir.1975) (trial irreparably marred by closing argument that fabricated testimony and used damaging facts not in evidence). The testimony used in the defendant's closing argument came originally from the plaintiffs' witness. Monsanto's use of testimony presented at trial, even if that testimony was inaccurate, does not warrant a new trial.

■ Other grounds asserted by the plaintiffs provide similarly inadequate grounds for a new trial. Pretrial motions filed by plaintiffs complained of Monsanto's poor compliance with requests for discovery and of the court's entry of a protective order. For reasons stated in our discussion of the plaintiffs' cross-appeal, *infra,* these complaints provide no basis for a new trial. Even when the rushed nature of the trial is factored in, these events are not "pernicious occurrences" justifying a new trial on the claims of the eight trial plaintiffs.

While acknowledging that the trial court's power to grant a new trial is an integral part of trial by jury, *Smith,* 773 F.2d at 613, we nevertheless must hold the grant of a new trial in this case to be an abuse of discretion. We vacate the district court's order for a new trial and remand so that judgment may be entered on the jury verdict.

## C. *Choice of Law*

In a pretrial order in response to plaintiffs' motion, the district court determined that Missouri law applied. Monsanto raises the issue of the proper choice of law in its appeal. In light of our holding vacating the order for a new trial and directing judgment be entered on the jury verdict, we assume Monsanto does not wish to disturb the choice of law determination as to the eight tried claims. The choice of law issue pertains, then, only to the 118 remaining untried claims. As to those claims the district court on remand will rule on the motion to sever and transfer, and we need

not express an opinion now on the question of choice of law.

## D. *Cross-appeal*

The plaintiffs raise two issues on cross-appeal pertaining to pretrial discovery matters.

### 1. Protective order

The plaintiffs contend the district court erred in granting Monsanto's motion for a protective order. Monsanto requested the order under Fed.R.Civ.P. 26(c) to protect confidential information concerning the processes and policies of the company. The order issued by the district court restricted use of discovery materials to the plaintiffs, their representatives, their counsel, and their experts or consultants.

Appellate review of the district court's order is confined to an abuse of discretion standard. *See Sanders v. Shell Oil Co.,* 678 F.2d 614, 618 (5th Cir.1982). A motion under Rule 26(c) must show good cause for an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Monsanto raised the motion for a protective order in response to plaintiffs' broad discovery requests; it claimed that plaintiffs' request necessitated the disclosure of confidential matters. Even when based on a conclusory statement of cause, discovery orders by the trial court are rarely reversed for an abuse of discretion. *Id.* (citing *Swanner v. United States,* 406 F.2d 716, 719 (5th Cir.1969)).

■ The protective order entered in this case was not unduly constricting. The plaintiffs were free to use any discovery materials in the development of their case. The protective order merely restricted use of those materials to this litigation. Although plaintiffs claim harm from the inability to share and compare information with other litigants in other cases, no prejudice has been shown sufficient to overcome the district court's broad discretion in this area. The entry of the protective order was not an abuse of discretion.

## 2. Sanctions

The district court has broad discretion in discovery matters and its rulings will be reversed only on an abuse of that discretion. *See Eastway Gen. Hosp. v. Eastway Women's Clinic, Inc.,* 737 F.2d 503, 505 (5th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985). The plaintiffs contend that the district court abused its discretion in refusing to sanction Monsanto under Fed.R.Civ.P. 37(b) for alleged discovery violations. The plaintiffs claim that Monsanto failed to comply with discovery requests in a timely manner. The sanction urged by the plaintiffs is the entry of a default judgment against Monsanto. *See* Fed.R.Civ.P. 37(b)(2)(C).

The first motion filed by the plaintiffs for sanctions was resolved by agreement between the parties. The second motion reurged the previous filing. It is clear from the record that the plaintiffs did not wish to seek a continuance. Rather, the requested sanctions included issue preclusion and entry of a default judgment. *See* Fed.R.Civ.P. 37(b)(2)(B) and (C). Imposition of extreme sanctions is appropriate where noncompliance has been willful or in bad faith. *See Batson v. Neal Spelce Assoc., Inc.,* 765 F.2d 511, 515 (5th Cir.1985). The plaintiffs failed to show that Monsanto's conduct warranted such sanctions. The district court's refusal to impose sanctions was proper.

### E. *Motion to Sever and Transfer*

The district court, because of its disposition of the case, did not rule on the defendant's motion to sever and transfer the remaining 118 untried claims. We do not decide the issues raised by parties in this respect so that the district court, on remand, may consider them in the first instance.

Judgment VACATED; cause REMANDED with directions.