**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-10814
Summary Calendar

RANDAL CROSSWHITE

Plaintiff - Appellant

v.

LEXINGTON INSURANCE COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:07-CV-119

Before WIENER, STEWART, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

This appeal concerns a claim filed by Randal Crosswhite against Lexington Insurance Company ("LIC") for tortious interference of Crosswhite's contract of employment with Rentech Boiler Systems, Inc. ("Rentech"). In short, Crosswhite alleges that LIC improperly influenced Rentech, its insured, to place Crosswhite on unpaid leave—a move that ultimately led to his resignation—because of his

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

confidential position with Rentech and close relation to two individuals (his wife and stepson) who were suing Rentech in a separate case at the time. The district court granted summary judgment to LIC based largely on Crosswhite's inability to offer evidence to support his claim. Crosswhite concedes a lack of evidence, but blames it on the district court's refusal to require LIC to produce its claims file on the action involving Crosswhite's relatives. Given that Crosswhite's only challenge on appeal is to this discovery order—as opposed to the existence of any other evidence in his favor—and that such orders are reviewed with deference, we affirm the district court's discovery order and entry of judgment for LIC.

## FACTS AND PROCEEDINGS

Rentech hired Crosswhite in 2001. During his employ, Crosswhite served as Rentech's vice president and chief financial officer. In August 2006, Rentech put Crosswhite on unpaid leave for an indefinite period. Rentech's stated reason was a conflict of interest because Crosswhite held a job with access to Rentech's sensitive financial information while his stepson, Preston Teel, and his wife, Lesa Crosswhite, were suing Rentech in a separate lawsuit. The relatives' action involved a serious work accident in 2005 involving Teel, who also worked for Rentech. It was first filed in February 2006, sought at least $10 million in relief, and was pending at all relevant times. In January 2007, Crosswhite and Rentech entered into an agreement that permanently terminated Crosswhite's employment and exchanged a lump sum severance payment for a release. The release did not include LIC.

In April 2007, Crosswhite filed this action against LIC in state court. LIC promptly removed. In his complaint, Crosswhite alleges that LIC, which insured Rentech at various times, arranged to have Crosswhite put on unpaid leave in

2

August 2006 to induce his wife and/or stepson to drop their action. Crosswhite claims that LIC's actions constituted tortious interference with his employment contract and that LIC was therefore responsible for his August 2006 leave and termination five months later.

After a period of discovery, LIC filed a motion for summary judgment. LIC asserted that Crosswhite's claim fails because: 1) there was no evidence of willful or intentional interference, 2) LIC denied indemnity to Rentech on the relatives' action and withdrew defense coverage in that case months before Rentech put Crosswhite on leave, and 3) there was no admissible evidence that LIC's conduct caused damage to Crosswhite given his negotiated severance agreement, or that Crosswhite was damaged in light of that agreement. In a two-page response to LIC's motion, Crosswhite offered no evidence, but simply professed an inability to respond in light of the district court's refusal to compel production of LIC's claims file on his relatives' case. Crosswhite then argued that, due to a lack of access to the claims file, he "has no choice but to allow the motion for summary judgment to go uncontested so [he] can appeal the court's order denying [his] motion to compel discovery."

The district court granted LIC's motion for summary judgment on July 28, 2008. The district court found that "[b]y [Crosswhite's] failing to come forward with even so much as an affidavit or citations to his own deposition in an effort to create a genuine issue of material fact, [LIC]'s evidence and arguments go without rebuttal." As to the claims file in his wife and stepson's case, on May 20, 2008, the court denied Crosswhite's motion to compel and granted LIC's motion for a protective order covering that file and related information on a declaratory judgment action for insurance coverage of the relatives' case. The court's May

20, 2008 order did not detail its reasoning, only that it "consider[ed] all relevant arguments and evidence." The district court did, however, make an exception for information not "protected by legal privileges" "to the extent it concerns . . . Crosswhite's employment issues with [Rentech]." In seeking protection of non-employment information from the collateral actions, LIC had argued that the materials were covered by the work-product doctrine or attorney-client privilege, and, in support, provided a detailed privilege log. As to good cause in support of the protective order, LIC cited the unfair advantage Crosswhite's relatives would gain and the prejudice LIC would suffer in the then-pending actions. For his part, Crosswhite argued that the information sought was "necessary" for him to prepare his case because his "claims relate directly to conduct engaged in by [LIC] . . . in connection with the defense" of the relatives' action.

On appeal, Crosswhite does not actually appeal the district court's grant of summary judgment. Rather, his sole point of error is that "[t]he trial court erred in not requiring [LIC] to produce its claims file in the state court litigation involving Lesa Crosswhite and Preston Teel."

## STANDARD OF REVIEW

This court reviews grants of summary judgment *de novo*. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This court "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003).

Notwithstanding its *de novo* review of summary judgment on the whole, this court reviews discovery orders for abuse of discretion—a fact both parties concede. "The district court has broad discretion in discovery matters and its rulings will be reversed only on an abuse of that discretion." *Scott v. Monsanto Co.*, 868 F.2d 786, 793 (5th Cir. 1989). Because the only ground raised on appeal by Crosswhite concerns the district court's refusal to allow discovery of certain collateral case information, we review this appeal for abuse of discretion. *See Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (reviewing protective order under abuse of discretion standard). Crosswhite concedes judgment in the absence of the information at hand, while remand—and not reversal and entry of judgment—would be necessary if we were to find the information discoverable, because it is not yet in the record.

## DISCUSSION

The Federal Rules of Civil Procedure provide, "[u]nless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Nevertheless, the Rules also provide that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . insurer, or agent)." *Id*. at 26(b)(3)(A). A party may move to compel production of materials that are within the scope of discovery and have been requested but not received. FED. R. CIV. P. 37(a). Yet, a court may decline to compel, and, at its option or on motion, "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden . . ., including . . . forbidding inquiry into certain

matters, or limiting the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(D); *see also* FED. R. CIV. P. 37(a)(5)(B). The grounds for a protective order can include privileged or work-product material, but can also include the improper sharing of confidential information between litigants in separate cases. *See Scott*, 868 F.2d at 792.

Based on our review of the privilege log, there appear to be three different sets of materials at issue. The first consists of documents dated from January 2001 to September 2004, which largely concern claims investigator "evidence." The second set consists of documents dated from June 2005 to October 2005, which concern coverage of a "claim"; the injury to Crosswhite's stepson that gave rise to the collateral legal action occurred on June 3, 2005. The third set consists of documents dated February 2006 to November 2007, which concern the "case" and its underlying claim; the relatives' action was first filed on February 6, 2006.

Turning to the first set of materials—*i.e.*, from January 2001 to September 2004—their nature is unclear. They do not seem to concern the relatives' action in any direct sense, particularly given that they pre-date Teel's injury. It appears unlikely that they would be considered part of the relatives' "claims file"—*i.e.*, the target of the motion to compel and protective order—in any event. Nevertheless, because neither party briefed the question, either on appeal or in the district court, we decline to address the issue here. *See* FED. R. APP. P. 28(a) (providing briefing requirements). The parties assume that the only materials at issue are those concerning the "defense of the [relatives'] case," as Crosswhite puts it in his brief. Even if we were to independently review these materials, we cannot hold that the protective order, which covers "the insurance adjuster claim files" but excludes information "concern[ing] . . . Crosswhite's employment issues

6

with his former employer," constitutes an abuse of discretion. *See United States v. Garrett*, 571 F.2d 1323, 1326 (5th Cir. 1978) ("[E]rrors made with regard to the allowance of discovery do not require reversal unless they result in substantial prejudice to a party's case."). Crosswhite was still free to inquire, whether from the documents at issue or alternative discovery, into materials with legitimate connections to his claim of employment interference.

As to the second and third sets of materials in the log—*i.e.*, from June 2005 to October 2005 and February 2006 to November 2007—these are coverage and litigation materials, respectively. As to coverage, the work-product doctrine can cover insurers in their investigative roles, *see* FED. R. CIV. P. 26(b)(3)(A), and given the nature of the case—coverage of the crushing of a child laborer's hands while cleaning a dangerous machine—expectation of litigation was reasonable. *See Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (work-product doctrine applies if there was "a solid basis to question [the plaintiff's] insurance claim"). As to the litigation documents, a more clearly protected area of work product could scarcely be found given that, by their nature, these are materials "prepared in anticipation of litigation." FED. R. CIV. P. 26(b)(3)(A). An open question, and one which occupies the bulk of the parties' briefs is whether such work-product protection extends to the present case. Yet, it is unnecessary to resolve this issue because we conclude, for the reasons stated above, that the district court's order does not constitute an abuse of discretion in any event. *See Sanders*, 678 F.2d at 618 ("A trial court enjoys wide discretion in determining the scope and effect of discovery . . . [i]t is, in fact, unusual to find an abuse of discretion in discovery matters."); *see also Scott*, 868 F.2d at 792 ("Even when based on a conclusory statement of cause, discovery orders . . . are rarely

reversed for an abuse of discretion.").  The protective order permits inquiry into the employment-related matters at issue in Crosswhite's complaint and excludes only privileged materials or those that are unrelated to his employment and would provide an undue advantage to related adversaries of LIC in an unrelated case.

In sum, because of the prospect of undue advantage involved and the fact that relevant, non-privileged, employment-related materials were still fair game, we conclude that the district court did not abuse its discretion in denying the motion to compel and issuing the protective order.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's discovery order and grant of summary judgment to LIC.