Michael David WINTER,
Plaintiff–Appellant,

and

Aetna Life & Casualty Insurance Co.,
Intervenor–Appellant,

v.

BRENNER TANK, INC. and Bar–Bel Fabricating Co., Inc.,
Defendants–Appellees.

No. 90–3011.

United States Court of Appeals,
Fifth Circuit.

March 18, 1991.

Guy A. Modica, Sr., Modica, Fontenot & Dowden, Baton Rouge, La., for Winter.

Mark L. Riley, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for intervenor-appellant.

Robert E. Barkley, Jr., Barkley & White, New Orleans, La., Arnd N. von Waldow, Pittsburgh, Pa., for defendants-appellees.

Before THORNBERRY, JOHNSON and DAVIS, Circuit Judges.

THORNBERRY, Circuit Judge:

The plaintiff, an employee for a trucking company, allegedly fell from a ladder attached to an eighteen-wheel chemical tank trailer when the braces attaching the ladder to the bottom of the tank truck broke. The plaintiff brought a products liability action against the company that sold the tank trailer and the company that actually fabricated and assembled the tank trailer and ladder. The plaintiff sought to prove that the ladder was defective and unreasonably dangerous when it left the hands of the defendants. A jury found that the ladder was not unreasonably dangerous, and the district court dismissed the plaintiff's suit. The plaintiff filed a motion for a judgment notwithstanding the verdict or in the alternative, a new trial. Both motions were denied and the plaintiff now appeals those denials. The plaintiff also suggests that a new trial is mandated because of prejudicial remarks made by defense counsel during cross-examination of the plaintiff. We are not persuaded that the plaintiff was prejudiced by such remarks, nor do we find that he is entitled to a judgment n.o.v. or a new trial; therefore, we AFFIRM the jury's verdict.

## FACTS AND PROCEDURAL HISTORY

On August 3, 1987, the plaintiff, Michael David Winter ("Winter"), was employed as a truck driver for Louie Vielee Trucking Company/L & B Transportation Company. On that day, he was hauling caustic soda from a plant in Baton Rouge, Louisiana, to Shepperd Oil in Mermentau, Louisiana. Upon arriving at Shepperd Oil, Winter began the unloading process, which includes attaching an air hose to the tank trailer. Winter had to climb up and down a ladder attached to the tank trailer in order to perform this procedure, and he did so without incident.

The vertical supports or handrails of the ladder were bolted to the walkway on top of the tank. The vertical supports were also bolted and welded to two metal channels or braces mounted to the tank's underside and extending parallel to the ground and out to the ladder.

During the unloading process, Winter again climbed the ladder to check air pressure gauges to make certain that the chemical was being unloaded at a normal rate. As Winter began to descend (about two or three steps from the top), he felt a movement in the ladder, which he claims caused him to lose his balance and fall approximately six feet to the ground. No one saw the accident, but a co-worker testified that he saw Winter dusting himself off just after the time when Winter claims to have fallen. Upon inspecting the ladder, the two men found that the vertical supports had broken near the point where the supports are connected to the braces mounted on the underside of the truck. Thus, the bottom of the ladder had moved inward toward the hull about four to six inches. The top of the ladder had remained bolted to the walkway on top of the truck.

Winter finished his work at the Shepperd Oil plant, but because of a pain he was experiencing in his back, he did not finish his day's work; instead he went to the emergency room of the Baton Rouge General Hospital for treatment. As a result of the accident, Winter claims to have suffered a ruptured intervertebral disk that required an anterior cervical diskectomy and fusion.

Winter brought a products liability suit against Brenner Tank, Inc. ("Brenner"), the company that sold the tank trailer to his employer, and Bar–Bel Fabricating Company, Inc. ("Bar–Bel"), the company

that actually fabricated and assembled the tank trailer and ladder.[1] Aetna Life and Casualty Insurance Company, the worker's compensation insurer for Winter's employer, intervened to recoup the worker's compensation benefits and medical expenses it had paid to Winter.

The thrust of Winter's claim was that the ladder was defective and unreasonably dangerous when it left the hands of the defendants. Winter claimed that the ladder had been misaligned during the assembly process and that this misalignment produced a crack, which later grew and eventually led to the break that caused his fall. The defendants disputed Winter's misalignment theory and suggested that the crack was caused by an impact to the ladder, which occurred after the tank trailer was put into service. At the close of the case, the jury found that the ladder was not unreasonably dangerous, and the district court dismissed Winter's suit. Winter promptly filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. Both motions were denied by the district court. Winter now appeals those denials and also claims that a new trial should be granted based on prejudicial comments made by defense counsel during cross-examination of Winter.

## DISCUSSION

### I. MOTION FOR NEW TRIAL.

Winter claims that he is entitled to a new trial based on two different theories. First, he claims that the jury verdict was against the great weight of the evidence, and second, he claims that improper remarks by the defense counsel prejudiced the jury against him. We find that the district court properly denied the plaintiff's motion for new trial based on insufficiency of evidence, and we find that the remarks made by defense counsel, though improper, did not substantially affect Winter's right to a fair trial.

### A. Sufficiency of Evidence

■ The critical issue in this case was whether the ladder attached to the tank

trailer was defective or unreasonably dangerous for normal use when it left the control of the defendants. All parties agree that the cause of the break was a metal fatigue crack; however, they disagree as to the cause of the initial crack. A fatigue crack describes the process through which a crack in a piece of metal can grow and eventually lead to a break when the metal is subjected to continued vibration or stress on that particular crack.

Winter introduced expert testimony in an attempt to show that the initial crack was caused by a misalignment of the ladder when it was attached to the tank trailer. One of Winter's experts estimated that a misalignment as small as a quarter-inch would have been sufficient to set up the stresses necessary to start the fatigue crack. The defendants countered this testimony with their own expert who opined that a quarter-inch misalignment would not result in a fatigue failure. The defendants also pointed out that Winter's experts never saw the ladder while it was still attached to the trailer; their measurements and evidence of misalignment were derived by studying several photos of the ladder after it had been welded back into place.

The defendants' expert, also relying on photographic evidence, testified that the ladder showed signs of a post-manufacture impact that could have caused the crack. The expert pointed out that one of the supporting channels or braces for the ladder appeared to be bulged, and he attributed the bulge to an impact that would have been great enough to cause the crack. The defendants also emphasized that the ladder was on the driver's blind side (passenger side) and that a low speed impact, such as might occur when backing into a tight quarter, could misalign the ladder without leaving any other visible signs of impact.

■ A plaintiff is entitled to a new trial whenever the jury verdict is against the great weight of the evidence. *See Rousseau v. Teledyne Movible Offshore*,

---

**1.** Subsequent to the accident, Bar–Bel was pur-     chased by Brenner.

*Inc.*, 812 F.2d 971, 972 (5th Cir.), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987). We review the denial of a motion for new trial under an abuse of discretion standard. *See Deloach v. Delchamps, Inc.*, 897 F.2d 815, 820 (5th Cir. 1990).

> When the trial judge has refused to disturb a jury verdict, all the factors that govern our review of his decision favor affirmance. Deference to the trial judge, who has had an opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record, operates in harmony with deference to the jury's determination of the weight of the evidence and the constitutional allocation to the jury of questions of fact.

*Shows v. Jamison Bedding, Inc.*, 671 F.2d 927 (5th Cir.1982); *see also Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir.1989) (denial of a motion for new trial not scrutinized as heavily as the grant of a motion for new trial because of deference due to a jury). We are not convinced that the jury verdict in this case was against the great weight of the evidence.

This lawsuit presented a classic case of the battle between the experts. Both parties presented evidence to support their respective theories on how the fatigue crack was initiated, and both sides attempted to impeach the testimony and evidence presented by the other. The jury and the trial court judge were in the best position to judge the credibility of each presentation. "If a new trial is to be granted on evidentiary grounds, the jury's verdict must be 'against the great—not merely the greater—weight of the evidence.'" *Scott v. Monsanto Co.*, 868 F.2d 786 (5th Cir. 1989) (quoting *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362–63 (5th Cir.1980) (per curiam)). The jury's verdict was not against the great weight of the evidence, and the district court did not abuse its discretion in denying Winter's motion for a new trial.

**2.** The interrogatories were written such that a negative response to the first question would

In his brief on appeal, Winter claims that the jury never reached the question of whether the crack was caused by a manufacturing flaw or a post-manufacture impact. The jury answered only one of six special interrogatories concerning the ladder, and Winter claims that their answer demonstrates that the jury did not understand the law or chose to ignore the law.[2] The interrogatory and response were as follows:

(1) DO YOU FIND THAT THE LADDER MOUNTED ON THE TANK TRAILER MANUFACTURED BY BRENNER TANK, INC. AND BARBEL FABRICATING COMPANY, INC. WAS DEFECTIVE, THAT IS, THAT IT WAS UNREASONABLY DANGEROUS TO NORMAL USE?

  YES___ NO X

Since every expert who testified before the trial court agreed that the ladder failed due to fatigue cracking, Winter claims that the jury, as an initial matter, was required to find that the ladder was defective.

Although we agree that the interrogatory could have been more clearly written, we do not subscribe to Winter's simplified reading of the question. The result of Winter's analysis would lead us to the conclusion that the first interrogatory served no purpose. If both parties had been in agreement on this particular issue, then the interrogatory would not have been presented. A better reading of the interrogatory, and one fully supported by additional oral instructions, would be a reading which asks about the contested issue: whether the ladder was defective as the result of misalignment at the manufacturing stage or whether the defect resulted from a post-manufacturing impact.

As written, the question was somewhat ambiguous and the wording evidently confused the jurors, because they asked the court for additional instructions on this particular interrogatory. Specifically, they asked:

1. What is considered unreasonably dangerous?

have precluded the jury from going on to answer the five remaining questions.

2. At what point is [interrogatory] # 1 directed? Before fall or after fall?

*Record on Appeal,* vol. 4 at 975. The jury was returned to the courtroom, and the judge, in relevant part, provided the following additional instructions orally to the jury:

> [I]f it is true that when the ladder left the ... defendants' factory, that the ladder had been installed in such a fashion that these cracks were caused by the stress in the assembly or installation of the ladder, the ladder was as a—under the definition—unreasonably dangerous in normal use.... [I]f the ladder had not been installed in such a fashion that it would be subject to the stress that plaintiff claims, then it was not, and could not be, unreasonably dangerous in normal use.... [O]ne of the essential elements is that plaintiff must have offered sufficient evidence to establish, by a preponderance of the evidence, that the defect existed at the time it left the plant.

*Supplemental Record on Appeal,* vol. 2 at 697 (transcript of additional oral instructions).

It is clear from the additional instructions that the first interrogatory was asking about the contested issue in this case: whether the ladder attached to the tank trailer was defective or unreasonably dangerous for normal use *when it left the hands of the defendant.* The jury was told that the ladder would be considered unreasonably dangerous to normal use if they believed, as Winter had argued, that the fatigue crack had been caused by a misalignment of the ladder at the time of assembly or installation. Alternatively, they were told that the ladder would not be considered unreasonably dangerous if they believed, as the defendants had argued, that the defect in the ladder developed after it had left the control of the defendants. The judge asked the jury twice if the additional instructions were helpful, and both times the jurors nodded affirmatively. *See id.* After receiving the additional instructions, the jury deliberated for approximately twenty minutes and then returned with their verdict. *See id.* at 699.

"A special verdict must, of course, be construed in the light of the surrounding circumstances, including the instructions of the court." *McVey v. Phillips Petroleum Co.,* 288 F.2d 53, 59 (1961). Under the circumstances, we find that the additional instructions provided by the court were sufficient to clear up any confusion which the written interrogatory may have created. The additional instructions were unambiguous, and we find that the jury understood the issues before them and their duty to determine those issues. *See McCullough v. Beech Aircraft Corp.,* 587 F.2d 754, 759 (5th Cir.1979). It should also be noted that Winter's counsel acquiesced in these additional instructions by answering in the negative when asked by the district court whether he had any objections to the instructions. *See Supplemental Record on Appeal,* vol. 2 at 698.

Since the jury did not find that the ladder was defective or unreasonably dangerous when it left the hands of the defendants, the district court was correct in dismissing Winter's suit.

### B. Remarks by Defense Counsel

■ Winter next claims that he is entitled to a new trial because the defense counsel violated an order in limine that prohibited the defendants from making any reference to or introducing at trial any evidence of a past criminal conviction in Winter's record or from introducing at trial any evidence concerning the cause or grounds for plaintiff's separation or divorce from his wife.

While cross-examining Winter, the defense counsel asked about Winter's conviction and implied that the conviction occurred after the date of the accident. *See Supplemental Record on Appeal,* vol. 1 at 164. Winter's counsel immediately objected to the question, but did not request a mistrial. The district judge promptly instructed the jury to disregard the statement. Later in his questioning, the defense counsel alluded to the Winters' divorce, which drew an immediate response from the bench. *See id.* at 170. The judge

instructed the defense counsel not to pursue the topic and instructed the jury to disregard any reference to Winter's wife as it had no relevance to the claim before them. Winter's counsel raised no objection and did not request a mistrial.

■ When counsel for either party makes an improper statement during trial, "we must determine whether the remark impaired a substantial right of the objecting party." *Dixon v. Int'l Harvester Co.,* 754 F.2d 573, 585 (5th Cir.1985); *see also Fed.R.Civ.P.* 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). To warrant a new trial the defense counsel's misconduct in the form of improper questioning must be so pronounced and persistent that it permeates the entire proceeding. *See United States v. Lichenstein,* 610 F.2d 1272, 1281 (5th Cir.), *cert. denied, Bella v. United States,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980); *see also Dixon* 754 F.2d at 585–86 ("To justify a reversal based on improper comments of counsel, the conduct must be such as to gravely impair the calm and dispassionate consideration of the case by the jury.")

Though the questions propounded by the defense counsel were certainly improper, we cannot hold that they so permeated the proceedings such as to deny Winter's right to a fair trial. In each case, the judge delivered an immediate curative instruction, and the defense counsel made no additional references to either issue. The jury was never asked to focus on this evidence, and we will not assume, without more, that the corrective measures had no impact. *See Crown Colony Distribs., Inc. v. United States Fire Ins. Co.,* 510 F.2d 544, 545 (5th Cir.1975); *see also Lichenstein* 610 F.2d at 1281–82 (improper comments "may be rendered harmless by curative instructions to the jury").

We also find it significant that Winter's counsel acquiesced in the court's curative instructions by failing to request a mistrial. Winter's counsel made a strategic determination not to request a mistrial at the time the improper comments were made, and we will not allow him to challenge the verdict based on those same comments after having had a chance to see the verdict. *See Maldonado v. Missouri Pacific Ry. Co.,* 798 F.2d 764, 771 (5th Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987); *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 782 (5th Cir. 1983); *see also United States v. Diaz–Carreon,* 915 F.2d 951, 959 (5th Cir.1990) ("[T]he failure of defense counsel to seek a mistrial suggests that any lingering prejudice from the improper comments was minimal.").

For the foregoing reasons, we find that the district court correctly denied Winter's motion for a new trial.

## II. JUDGMENT NOTWITHSTANDING THE VERDICT.

■ Winter also claims that the district court incorrectly denied his request for a judgment notwithstanding the verdict. The standard for granting a motion for judgment notwithstanding the verdict is more stringent than that required by the standard for a new trial. *See Keeler v. Richards Mfg. Co., Inc.,* 817 F.2d 1197, 1200 (5th Cir.1987); *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir. 1982). A court should not grant a judgment n.o.v. unless the "the facts and inferences point so strongly and overwhelmingly in favor of one party" that reasonable men and women could not have arrived at a contrary verdict. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). For the reasons stated above in section I(A), we find that there is ample evidence to support the jury's verdict, and we find that the district court did not err in refusing to grant Winter's motion.

The jury's verdict is AFFIRMED.