**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-60341**
_____

**LAURIE HAMILIN PICOU,**

**Plaintiff-Appellee,**

**versus**

**CITY OF JACKSON, MISSISSIPPI,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Mississippi**
**(3:99-CV-604-BN)**
_____

August 13, 2002

Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

For Laurie Picou's sex discrimination and retaliation action against the City of Jackson, primarily at issue is whether there is sufficient evidence for emotional distress. She accepted a remittitur to $50,000 from the $400,000 jury award. *REVERSED* **and** *REMANDED.*

I.

Picou, an officer with the Jackson Police Department (JPD), transferred to the canine unit in July 1996, where she was assigned "Geno"; provided $400 monthly for the dog's care; allowed to use a "take home" automobile and provided gasoline for it; and promoted to detective. In August 1997, Picou advised Lieutenant Rochester

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

she was pregnant and required a light duty assignment. Although Picou wanted to continue with the canine unit and presented a physician's letter stating she could do so, JPD reassigned her to an administrative position and reassigned Geno.

While Picou was on light duty, Lieutenant Rochester received correspondence from the Assistant Chief indicating Geno's reassignment was temporary and he would be returned to Picou upon her return to regular duty. Picou filed a grievance with JPD over Geno's reassignment; the Police Chief represented to Picou Geno would be returned to her upon her ability to "resume full duties". Picou filed an EEOC charge, claiming gender discrimination over Geno's reassignment.

Following childbirth, Picou returned to work in January 1998 and requested Geno. The Deputy Chief informed Picou: Geno would *not* be reassigned to her because he was performing well with his new handler; she would be assigned "Casper". Picou responded that Casper was known by members of the canine unit to have problems. The Deputy Chief responded it was the decision of the canine unit coordinator (the coordinator).

Upon Picou's confronting the coordinator, her version is he responded: she should not be a "baby-making machine"; and if she wanted a pet, she could purchase one from a pet store. His version is he told Picou Casper would be assigned to her because he felt Casper would perform better with a more experienced handler (Picou). Picou filed her second discrimination charge with the EEOC, claiming, *inter alia*, retaliation.

2

Later in January, Picou was assigned Casper and experienced numerous problems with him. Casper displayed timidity and fear that interfered with his ability to function. Crowds and black police officers triggered particularly severe nervous reactions. After a veterinarian's examination that May, Casper was prescribed Phenobarbital.

Following a confrontation with the coordinator concerning Casper's medication, the coordinator directed Picou to kennel Casper; Picou was transferred out of the canine unit in July; she was required to return her "take home" automobile; and her rank was reduced to patrol officer. Shortly thereafter, Picou filed her third EEOC charge, claiming, *inter alia*, further retaliation and continuing discrimination. That September (1998), she filed her fourth charge.

In March 1999, Picou was involved in an automobile accident while driving a police vehicle outside the city limits. She was notified JPD intended to reprimand her (two day suspension) for violating JPD policy (operating city vehicle outside city limits without supervisor's prior approval). On appeal to the Jackson Civil Service Commission, the suspension was reduced to a written reprimand.

Also that March, the EEOC determined reasonable cause existed to believe JPD discriminated and retaliated against Picou; she declined to engage in the conciliation process. After receiving a right to sue letter from the EEOC, she filed this action, claiming gender discrimination and retaliation, in violation of Title VII of

3

the Civil Rights Act of 1964, as well as violations of 28 U.S.C. § 1983 and the Family and Medical Leave Act, 29 U.S.C. § 2611.

Summary judgment was granted against Picou's FMLA and § 1983 claims. Concerning Title VII, the jury returned a verdict for her, awarding *no* back pay but $400,000 for emotional distress. Picou moved for attorney's fees and costs; the City, for judgment as a matter of law (JML), new trial, or remittitur.

The JML motion claimed Picou failed to prove emotional distress; the new trial motion, that Picou's "counsel engaged in gross misconduct during closing arguments by making improper, prejudicial and inflammatory arguments to the jury". Remittitur to $50,000 was ordered with the provision that, if accepted, Picou would also receive attorney's fees and costs of approximately $41,000. Picou accepted the remittur.

## II.

Although not contesting liability, the City presents three issues: Picou failed to present sufficient proof of *actual injury* to support the emotional distress damages; the remittitur fell outside of the maximum recovery rule and should have allowed no more than $10,000; and the district court abused its discretion by not granting a new trial. (As discussed in part II.B., it is necessary to address only the sufficiency issue.)

## A.

In closing argument, Picou requested $1 million for emotional distress. The jury awarded $400,000. The City's post-verdict, Rule 50(b) motion claimed insufficient evidence.

4

1.

As she did in district court in contesting the Rule 50(b) motion, Picou claims the City failed to raise this issue in its pre-verdict Rule 50(a) motions. Generally, a Rule 50(b) JML is limited to the grounds presented in the Rule 50(a) motion. *E.g., Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003 (5th Cir. 1997); FED. R. CIV. P. 50(b). This permits the district court to re-examine the sufficiency of the evidence after trial while, pre-verdict, the nonmovant is alerted to a potential insufficiency in her case prior to its submission to the jury. *E.g., MacArthur v. Univ. of Tex. Health Ctr.*, 45 F.3d 890, 896-97 (5th Cir. 1995). Where these purposes are satisfied, technical noncompliance with Rule 50's requirements is permitted. *See, e.g., Polonco v. City of Austin, Tex.*, 78 F.3d 968, 975 (5th Cir. 1996); *Bay Colony*, 121 F.3d at 1003-04.

At the close of Picou's case, the City requested JML, contending: "there has been no sufficient evidence put forward by the plaintiff to support ... claims for sex discrimination and retaliation under Title VII". The court immediately responded: "All right. *I do not need any argument on that motion. That motion is denied*". (Emphasis added.) Likewise, at the close of the evidence, after the City's attorney stated, "I would like to make a [JML] motion", the court responded: "*I'll consider it made, and you may consider it refused* .... Denied". (Emphasis added.)

Usually, parties are not allowed to raise issues, such as new legal defenses or theories, when not raised in Rule 50(a) motions

5

because, in such situations, the nonmovant is prevented from presenting his entire case to the jury. *See Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1010 (5th Cir. 1998) (defendant's agency status); *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 171-72 (5th Cir. 1985) (affirmative defense); *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 846 (5th Cir. 1975) (new theory of antitrust liability), *cert. denied,* 424 U.S. 934 (1976). However, when the requested JML deals with evidence sufficiency and the defendant moves for JML at the close of all the evidence, technical noncompliance with Rule 50 has been typically found *de minimus* if "the motion sufficiently alerted the court and the opposing party to the sufficiency issue". *Polonco*, 78 F.3d at 975; *see also, Alacatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 780-81 (5th Cir. 1999) (deciding whether technical noncompliance prejudiced the nonmovant). For instance, *Guilbeau v. W.W. Henry Co.*, 85 F.3d 1149, 1160-61 (5th Cir. 1996), *cert. denied*, 519 U.S. 1091 (1997), held a defendant's vague and broad pre-verdict JML motion preserved the sufficiency of the evidence on a product defect issue because the bulk of the evidence and trial focused on the defect and causation.

Although the City's motion could have been more specific, two factors convince us Rule 50's purposes were sufficiently met. First, the district court cut off any argument by either party, by immediately stating its intent to deny each of the two Rule 50(a) motions. Second, our review of the record shows the City consistently claimed *Picou failed to prove both liability and*

6

*damages*, although she offered evidence of both to the jury. *See Bay Colony*, 121 F.3d at 1003-04.

2.

We review *de novo* the JML ruling, applying the same standard as did the district court. *Coffel v. Stryker Corp.*, 284 F.3d 625, 630 (5th Cir. 2002). To grant JML against Picou, we must conclude "there is no legally sufficient evidentiary basis for a reasonable jury to find for [Picou] on [the damages] issue". FED. R. CIV. P. 50(a)(a)(1). We consider "all of the evidence in the record, draw[ing] all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence". *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). To uphold the damages award, Picou must "establish a conflict in substantial evidence on each essential element of [her] claim". *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)).

To recover more than nominal damages for emotional harm, the plaintiff must provide "proof of actual injury". *Carey v. Piphus*, 435 U.S. 247, 248 (1978). *Carey* addressed damages under 42 U.S.C. § 1983; but we have extended its reasoning to "cases involving federal claims for emotional harm", including Title VII. *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938 n.11 & 940 (5th Cir. 1996), *cert. denied,* 519 U.S. 1091 (1997).

*Vadie v. Miss. State Univ.*, 218 F.3d 365, 376-77 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001), *and cert. denied*, 531 U.S. 1150 (2001), summarized the level of specificity and types of evidence necessary to prove mental damages. There must be a "specific discernable injury to the claimant's emotional state", proven by evidence of the "nature and extent" of the harm. *Id.* at 376 (quoting **Patterson**, 90 F.3d at 938 & 940). "'[H]urt feelings, anger and frustration are part of life', and [are] not the types of harm that" can support an emotional damages award. *Id.* (quoting **Patterson**, 90 F.3d at 940).

A plaintiff's testimony alone may be insufficient; corroborating testimony or medical or psychological evidence may be required. *Id.* at 377. ("'[A] plaintiff's testimony, standing alone, can support an award ...; however, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated'", and "'conclusory statements that the plaintiff suffered emotional distress'" will not support an award for emotional distress. (quoting **Price v. City of Charlotte**, 93 F.3d 1241, 1254 (4th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997))). Evidence of emotional harm may include "sleeplessness, anxiety, stress, depression, marital strain, humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown". EEOC POLICY GUIDANCE No. 915.002 § II.(A)(2) (14 July 1992) (noting the EEOC typically requires medical evidence before a claimant may seek emotional damages during conciliation negotiations).

8

Picou's emotional distress evidence consisted of her and her husband's testimony. Her testimony was: she felt "ostracized", was "hurt", embarrassed, humiliated, and ridiculed; and the events "affected [her] marriage". Her husband testified: on more than one occasion, Picou came home "very upset and distraught"; and the events "badly affected us as a family".

Our cases have consistently held that more is necessary for emotional distress damages. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 370-71 (5th Cir.) (plaintiff's testimony of frustration, irritation, anger, and upset insufficient), *cert. denied*, 122 S. Ct. 346 (2001); *Brady v. Fort Bend County*, 145 F.3d 691, 718-20 (5th Cir. 1998) (plaintiffs' uncorroborated testimony that they: could not "accept it mentally"; were "highly upset"; experienced it as "the worst thing that has ever happened to me"; and "didn't feel like the same person" insufficient without specific manifestations of emotional harm and any evidence they sought medical treatment), *cert. denied*, 525 U.S. 1105 (1999); *Patterson*, 90 F.3d at 939-41 (plaintiff's uncorroborated testimony that racial slurs made her feel "frustrated", "real bad", "hurt", "angry", and "paranoid" were too vague); *but cf., Migis v. Pearle Vision, Inc.,* 135 F.3d 1041-47 (5th Cir. 1998) (uncorroborated but detailed "testimony of anxiety, sleeplessness, stress, marital hardship and loss of self-esteem" justified jury award of $5,000); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 809 (5th Cir. 1996) (affirmed jury award of $7,500 based on claimant's uncorroborated testimony that hostile

9

work environment made her feel "very embarrassed, very belittled", "about two inches high", and "pretty stupid").

Consequently, the conclusory statements by Picou and her husband concerning her hurt feelings and unspecified effects on her marriage and family are not sufficient evidence from which a reasonable jury could find emotional distress to support damages. *See Vadie*, 218 F.3d at 376; *see also Hitt v. Connell*, No. 01-50117 2001 WL 1764149 (5th Cir. 31 July 2002) (plaintiff's vague, conclusory testimony without corroborating evidence from family members or coworkers, medical evidence, or physical manifestations of distress cannot legally support emotional distress award).

## B.

As noted, having found Picou's evidence insufficient to support the damages award, we need not reach the City's other issues: remittitur, the maximum recovery rule, and denial of new trial. (The maximum recovery rule implicates the excessiveness of a jury award rather than whether the evidence is sufficient to support an award at all. *See, e.g., Salinas v. O'Neill*, 286 F.3d 827 (5th Cir. 2002).)

We note, however, the City's contentions concerning Picou's counsel's remarks during closing argument provide further support for holding the evidence does not allow emotional distress damages. In closing argument, Picou's counsel contended she should recover because: she was "personal[ly] attack[ed]" on cross-examination about her divorce and an action for excessive use of force/wrongful death in which she was a defendant; a JPD Internal Affairs officer

10

sat in the courtroom during trial; the City's equal employment opportunity officer appeared as the City's representative at trial; and the City's counsel was defending this case while handling the appeal of Picou's wrongful death case. Picou's counsel also asked the jury to "make a statement" with their damages award.

As stated, we need not reach whether this conduct was "so pronounced and persistent that it permeate[d] the entire proceeding" and would warrant a new trial. *See Winter v. Brenner Tank, Inc.*, 926 F.2d 468, 472 (5th Cir. 1991). Nevertheless, it appears the conduct influenced the jury, especially considering the large emotional distress award (again, Picou requested $1 million) in the light of the pronounced lack of evidence concerning any actual injury apart from hurt feelings and unspecified effects on her marriage and family.

C.

Having decided there was insufficient evidence for the damages, and even though the City does not contest liability, we question whether Picou is entitled to prevailing party attorney's fees, especially in the amount awarded. *See Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992); *Flowers v. Southern Reg'l Physician Servs., Inc.*, 286 F.3d 798 (5th Cir. 2002). The City has not raised this issue. Nevertheless, it is subsumed within the challenge to the damages. As noted, the awarded fees were part of the remittitur accepted by Picou. This issue is best left for the district court on remand.

11

### III.

For the foregoing reasons, the jury award of $400,000, for which a remittitur to $50,000 was accepted, is **VACATED**; and this case is **REMANDED** for entry of judgment consistent with this opinion, including the appropriate amount, if any, for attorney's fees.

*VACATED and REMANDED*