# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 2, 2025

Lyle W. Cayce
Clerk

No. 24-40282

Gary Smith; Martha Smith,

*Plaintiffs—Appellants*,

*versus*

State Farm Lloyds,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:21-CV-837

_____

Before Elrod, *Chief Judge*, and Richman and Willett, *Circuit Judges*.

Per Curiam:[*]

This property-insurance dispute arises from tornado damage to Gary and Martha Smith's home. In April 2019, the Smiths purchased a homeowner's policy from State Farm Lloyds. Six months later, a tornado struck their home, and the Smiths filed a claim under that policy. State Farm investigated, dispatched a property inspector, and paid the Smiths

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

$292,901.67 for covered losses and additional living expenses. The Smiths, dissatisfied with State Farm's assessment of the damage, insisted that the company had acted in bad faith and wrongly withheld policy benefits.

They sued State Farm in the Eastern District of Texas, alleging breach of contract and violations of Texas insurance law. After a five-day trial featuring eight witnesses, 36 factual stipulations, and 384 exhibits, the jury found that State Farm had not breached the policy, engaged in unfair practices, or withheld payments owed under the contract.

One point of contention centered on Joe Shahid, an engineer who inspected and photographed the Smiths' home. His expert report relied in part on photographs that State Farm did not produce until the eve of trial. State Farm maintains that the omitted photos merely duplicated others already disclosed, that the omission was inadvertent, and that it produced the remaining images promptly once the oversight came to light. On the trial's second day, the Smiths moved to exclude Shahid—and any witness relying on the late-produced photos—from testifying. The district court denied the motion but limited Shahid's testimony to photographs that had been timely disclosed.

After the jury returned its verdict, the district court entered judgment for State Farm and denied the Smiths' motion for a new trial. On appeal, the Smiths argue that the district court erred in admitting Shahid's testimony and in entering judgment on what they claim was a verdict tainted by evidentiary violations and contrary to the weight of the evidence. We disagree. Finding no error in the district court's evidentiary rulings or in its entry of judgment on the jury's verdict, we AFFIRM.

I

The Smiths first contend that the district court erred by allowing testimony from one of State Farm's expert witnesses and therefore urge us

to reverse the court's final judgment. Because the district court acted well within its discretion in admitting the testimony, we AFFIRM its denial of the motion to exclude.

At trial, State Farm called Joe Shahid—an engineer who inspected the Smiths' home—as an expert witness. State Farm had timely designated Shahid as a witness, and the Smiths had already deposed him. But State Farm undisputedly failed—until the eve of trial—to disclose 993 photographs of the Smiths' property that Shahid had taken and partly relied upon in preparing his expert report.

That late disclosure violated the district court's scheduling order, the Local Rules, and Federal Rules of Civil Procedure. *See* E.D. Tex. R. CV-26(d); Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring parties to timely disclose all "facts or data considered by the [expert] witness"). The Smiths insist that the delay hampered their trial preparation and skewed the jury's verdict. They argue that the district court should have sanctioned State Farm by excluding Shahid entirely, along with any witness who relied on his photographs. *See* Fed. R. Civ. P. 37(c)(1)(C) (authorizing sanctions for discovery violations).

Because State Farm had disclosed Shahid but not the data he relied upon, the district court took measured steps: It limited his testimony, excluded the untimely photographs, struck any references to them, and withheld them from the jury's deliberations. Those actions track Rule 37's plain language: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See* Fed. R. Civ P. 37(c)(1). State Farm had identified Shahid six months before trial,

3

so his appearance was proper. But because it failed to timely produce the photos, the court excluded them during trial.

Under Rule of Evidence 403, a trial court may exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. *See Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004–05 (5th Cir. 1998) (permitting expert testimony but excluding photographs under Rule 403). We accord "great weight to the trial court's assessment of the prejudicial effect of the evidence, and prejudice may be rendered harmless by a curative instruction." *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007). We have long held that the "admission or exclusion of expert testimony is a matter left to the discretion of the trial court, and that decision will not be disturbed on appeal unless it is manifestly erroneous." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004). Sometimes, as the Smiths note, courts exclude expert testimony tied to untimely disclosures. *See, e.g.*, *BCE Emergis Corp. v. Cmty. Health Sols. of Am., Inc.*, 148 F. App'x 204, 220 (5th Cir. 2005). Other times, courts allow such testimony—often in limited form or with curative instructions. *See, e.g.*, *Primrose*, 382 F.3d at 563–64.

Here, the district court weighed the probative value of Shahid's testimony against potential prejudice and allowed the testimony on a limited basis. The trial judge—"best position[ed] to determine whether such testimony would be confusing or misleading to the jury"—found that its probative value outweighed any prejudice. *See United States v. Edelman*, 873 F.2d 791, 795 (5th Cir. 1989) (per curiam). Any prejudice to the Smiths was minimal: They had already deposed Shahid, and his trial testimony offered no surprises. *See, e.g.*, *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) ("Although [the appellant] failed to explain its failure to disclose, the prejudice to the adverse parties was negligible, because the witness in support of whose testimony the invoices were offered

had been designated properly as a witness before trial."). The court confined Shahid's testimony to admissible material and struck any reference to the excluded photos.

Finding no manifest error in the district court's careful handling of Shahid's testimony, we AFFIRM its judgment on the motion to exclude. *See Primrose*, 382 F.3d at 563.

## II

The Smiths next contend that the district court erred in entering judgment on the jury's verdict, arguing that the verdict rested on prejudicial exhibits and lacked evidentiary support. But "[o]nly when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." *See Lavender v. Kurn*, 327 U.S. 645, 653 (1946). Because the record amply supports the jury's verdict, we AFFIRM the district court's judgment.

As explained above, State Farm's missed deadlines, Shahid's testimony, and the excluded photographs caused little—if any—prejudice. The Smiths had deposed Shahid and were aware of his opinions before trial. The photographs, unsurprisingly, depicted the Smiths' damaged home and largely duplicated or supplemented images that State Farm had already disclosed. The district court, addressing the jury, clarified both the limits of Shahid's testimony and that many of his photographs were inadmissible. When State Farm's counsel attempted to rely on those inadmissible images, the court either struck the testimony or promptly admonished counsel. We presume that the jury followed the court's limiting instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000), which eliminated any meaningful prejudice to the Smiths, *see Valles*, 484 F.3d at 756 ("We give great weight to the trial court's assessment of the prejudicial effect of the evidence, and prejudice may be rendered harmless by a curative instruction.").

It is the jury—not the judge—that bears the solemn responsibility of weighing evidence, drawing inferences, and judging witness credibility. *See Wright v. Paramount-Richards Theatres*, 198 F.2d 303, 307–08 (5th Cir. 1952) ("The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts.") (citations omitted). Accordingly, a jury's verdict must stand so long as the record contains "*any* competent and substantial evidence tending fairly to support the verdict." *Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir. 1988) (emphasis added). We review the evidence in the light most favorable to the verdict and will affirm unless the proof points overwhelmingly the other way. *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992). The Smiths fall well short of meeting that heavy burden, so we decline to disturb the jury's considered judgment.

The trial record amply supports the legitimacy of the jury's verdict. The jury rendered its decision after a five-day trial featuring testimony from eight witnesses, 36 factual stipulations, 384 trial exhibits, and careful deliberation. Throughout trial, the Smiths had repeated opportunities to seek a mistrial in response to their evidentiary objections but instead accepted the court's limiting instructions governing the testimony and exhibits. At one point, they expressly declined the court's invitation to move for a mistrial. As we have noted, it is "significant that [a party's] counsel acquiesced in the court's curative instructions by failing to request a mistrial . . . . at the time [any] improper comments were made, and we will not allow him to challenge the verdict based on those same comments after having had a chance to see the verdict." *Winter v. Brenner Tank, Inc.*, 926 F.2d 468, 473 (5th Cir. 1991); *see also Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 733 (5th Cir. 2011)

("[T]he failure of . . . counsel to seek a mistrial suggests that any lingering prejudice from the improper comments was minimal." (quoting *United States v. Diaz-Carreon*, 915 F.2d 951, 959 (5th Cir. 1990))). Accordingly, the Smiths' acquiescence in the court's curative instructions reinforces—not undermines—the soundness of the court's judgment on the verdict. *See Winter*, 926 F.2d at 473.

The record likewise supports the jury's factual findings. The jury specifically found that State Farm did not (1) "fail to comply with the Insurance Policy"; (2) "engage in any unfair or deceptive act or practice" that damaged the Smiths; or (3) "fail to pay" the "full and complete insurance claim." The trial record corroborates those findings. *See Dawson*, 978 F.2d at 208 (instructing appellate courts to affirm a jury's verdict unless the evidence points overwhelmingly the other way).

Both sides presented expert testimony offering sharply divergent views of the property damage. State Farm's expert, Joe Shahid, testified that the Smiths' home could be restored to its pre-tornado condition with limited repairs. Another State Farm expert, Gary Boyd—a construction method and cost-of-repair expert—testified that the Smiths' estimates were overstated and reflected a full-scale "remodel" rather than "necessary" repairs. Although the Smiths' experts offered contrary opinions, the jury was entitled to credit State Farm's evidence. *See Wright*, 198 F.2d at 307–08.

The record, moreover, undermines the Smiths' allegation of bad faith: State Farm conducted its own appraisal, shared the results with the Smiths, and offered to reconcile any discrepancies in repair costs. State Farm also paid the Smiths $292,901.67 under their policy. The Smiths demanded far more—$2.5 million before the litigation began, and $25–250 million at closing argument "to send a message." Finally, the district court considered and denied the Smiths' motion for a new trial after confirming the integrity

7

of the jury's findings. Because the evidence does not point overwhelmingly against the verdict, we must affirm both the jury's decision and the district court's judgment. *See Dawson*, 978F.2d at 208.

\* \* \*

Accordingly, finding no reversible error, we AFFIRM the district court's judgment in full.