United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 1, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-31115

_____

HAL BECKHAM

Plaintiff-Appellant

versus

LOUISIANA DOCK COMPANY, L. L. C., ET AL.

Defendants

T. T. BARGE SERVICES MILE 237, INC.

Defendant-Appellee

_____

Appeal from the United States District Court for

the Eastern District of Louisiana

(No. 02-CV-2644-N)

_____

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This case arises from injuries allegedly sustained by plaintiff-appellant, Hal Beckham, who was employed by defendants Louisiana Dock Company and American Commercial Barge Lines, L.L.C. ("ACBL")[1] as a captain of the M/V SURVEYOR. The injuries were

_____

[*]Pursuant to 5ᵀᴴ CɪR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CɪR. R. 47.5.4.

[1] Louisiana Dock Company is a subsidiary of American Commercial Barge Lines.

1

allegedly sustained during a crew change, when Mr. Beckham was allegedly exposed to styrene vapors as he walked through the facilities of defendant-appellee, T. T. Barge Services Mile 237, Inc.  Mr. Beckham filed suit against T. T. Barge under a negligence theory and against his employer under maritime law and the Jones Act, 46 U.S.C. § 688.  By the time of trial, ACBL had filed for bankruptcy and was not party to the proceedings pursuant to the resulting automatic stay.  At trial Mr. Beckham alleged that his injuries were 100% attributable to T. T. Barge's fault.  After two and a half days of trial proceedings the jury returned a verdict for the defendant.  The district court denied Mr. Beckham's motion for a judgment as a matter of law and entered a final judgment in favor of defendant T. T. Barge. Mr. Beckham then moved for a new trial. He appeals the denial of that motion. We affirm.

**Background**

On June 4, 2002, the day of the alleged injury, Mr. Beckham was employed by defendant ACBL as a captain for the M/V Surveyor and was ordered by his employer to make board the SURVEYOR at the facilities of T. T. Barge alongside the Mississippi.  Mr. Beckham walked across the T. T. Barge facilities during his crew change. T. T. Barge is in the business of emptying and cleaning barges, and, on the morning of the fourth, two barges were being cleaned of styrene at the facility. Mr. Beckham apparently walked past a styrene barge, which had been cleaned that morning, where blowers

2

were being used to dry the interior. While walking past, Mr. Beckham claims to have inhaled styrene vapors. There were no witnesses to the incident. Upon reaching his boat, Mr. Beckham reported to co-workers that he had been exposed and was ill and having difficulty breathing. Co-workers reported this to staff at the T. T. Barge facility who prepared an incident report. Mr. Beckham went to the emergency room complaining of exposure to styrene with symptoms of cough, headache, weakness, nausea, difficulty breathing and chest tightness. Mr. Beckham was released from the hospital three hours later. Thereafter, over a period of months, he was seen by a series of medical experts regarding his alleged injuries. At trial the jury heard from three medical experts, two toxicology experts, and six fact witnesses about the circumstances in which the alleged exposure took place, the nature of styrene and styrene exposure injuries, and Mr. Beckham's medical history and treatment.

### Standard of Review

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted . . . in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was

3

unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Company*, 773 F.2d 610, 612 (5th Cir. 1985). In making a determination that the verdict is against the weight of the evidence, the court weighs all the evidence and need not view it in the light most favorable to the nonmoving party. *Id.* at 613. "A motion for a new trial should not be granted unless the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 838-39 (5th Cir. 2004). Denials of a motion for a new trial under Rule 59 are reviewed under an abuse of discretion standard. *Id.*

> When the trial judge has refused to disturb a jury verdict, all the factors that govern our review of his decision favor affirmance. Deference to the trial judge, who has had an opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record, operates in harmony with deference to the jury's determination of the weight of the evidence and the constitutional allocation to the jury of questions of fact.

*Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982).

## Analysis

The jury reached only one interrogatory, answering the

4

question "[d]o you find by a preponderance of the evidence that Hal Beckham sustained an injury or injuries on June 4, 2002, as a result of inhalation of styrene?" in the negative.[2] Mr. Beckham raised only two issues on appeal. The first is whether the trial court abused its discretion in finding that this answer was not against the great weight of the evidence. The second deserves little attention and is discussed in footnote two supra.

The two-and-a-half-day trial conducted in this case included expert testimony from both sides, which offered contrary opinions as to the relevant facts of the case. There was certainly abundant testimony from Mr. Beckham's doctors that he had suffered some injury and medical records demonstrated that he had reported symptoms of respiratory illness shortly after the alleged

---

[2] The plaintiff asserts that his right to new trial is made stronger due to the happening of "an undesirable occurrence" at trial. *See Shows*, 671 F.2d at 931. The gist of the argument is that the jury disregarded the trial court's instructions with respect to the interrogatory the jury answered. The trial court instructed the jury that "if the plaintiff was in good health prior to the June 4th 2002 incident, and injuries consistent with that event appeared shortly thereafter, there is a presumption that the plaintiff was injured as a result of the June 4th incident." 6 R. at 57. The plaintiff argues that since the evidence generally supported that Mr. Beckham was in good health before the incident and reported respiratory problems after the incident the jury should have answered the interrogatory in the affirmative. We reject this argument. First of all, there was evidence presented about pre-existing conditions. Second, the plaintiff's argument effectively skips the "consistent with that event" step which was certainly hotly contested. In sum, there is no evidence that the jury disregarded a jury instruction.

exposure.[3] The plaintiff's physicians and toxicologist testified that these symptoms can be caused by exposure to styrene fumes in high concentrations.

On the other hand, the defendant points to the testimony of an employee who had been working on the styrene barges in question on June 4, 2002, was qualified to take readings of the level of styrene vapors present on the barges, and had in fact done so, both before and after the alleged incident. The witness testified that he had tested the area for styrene vapors twice, before and after Mr. Beckham's alleged incident, and found "no reading." The witness testified that the "no reading" finding indicated that the area was "safe for workers to enter the tank without restrictions, safe to do hot work on the tanks and on the outer surface of the barge." R. 5 at 139. The defendant's toxicologist testified that if there was no styrene vapor present on the outside of the barge there should have been no injury.

Mr. Beckham also presented expert medical testimony on the alleged long term impact of the exposure on his heath. The long term symptoms reported included wheezing, bronchospasm, and abnormal performance on pulmonary function tests. He was not cleared by his doctor's to return to work until May 2003, almost a

---

[3] The emergency room physician reported the following symptoms: nausea, dizziness, general weakness, difficulty walking, headache, dry cough, extreme thirst, disorientation, difficulty breathing, chest heaviness and pain. (Ex. 24 p.14)

6

year after the alleged incident.

The defendant's toxicologist, however, noted that in reviewing studies on styrene exposure he could find no relationship between the particular styrene compound shipped in the barge and the long term symptoms reported by Mr. Beckham and his doctors. This toxicologist opined that under the circumstances of this alleged short term exposure, no long term effects would be produced. He explained that the dose of the substance is particularly relevant to the severity of any injury. The defendant's medical expert pointed out that Mr. Beckham's symptoms could have resulted from a pack-a-day smoking habit that Mr. Beckham had maintained for years.[4]

As there appears to have been an abundance of fact and expert testimony on each side, the relative credibility of these witnesses must be important to the outcome of the case. We will not find that the trial court judge abused its discretion in adopting the credibility determinations of the jury. *See Polanco v. City of Austin*, 78 F.3d 968 (5th Cir. 1996).

---

[4] These opinions were, of course, contested by Mr. Beckham's witnesses. The defendant points out, however, that Mr. Beckham admitted that he continued to smoke regularly up until the day of trial. It argues that the continued smoking, in combination with questions raised about the timeliness of his notification of healthcare providers about preexisting annual bronchitis and the fact that he admitted to taking an unauthorized "shortcut" through the T. T. Barge premises on the day of the event, putting him in proximity of the styrene barges, could have affected the jury's evaluation of Mr. Beckham's credibility.

## Conclusion

We find that the trial court did not abuse its discretion in denying the plaintiff's motion for a new trial.  Final judgment for the defendant T.T. Barge Services Mile 237, Inc. is AFFIRMED.